LINDA GIBB ET AL., APPELLANTS, V. ROBERT L. STRICKLAND ET AL.,
APPELLEES.
513 N.W.2d 274

Filed March 11, 1994.   No. S-92-440.

Carole McMahon-Boies, of Pepperl & McMahon-Boies Law Offices, P.C., for appellants.

Rocky C. Weber, of Crosby, Guenzel, Davis, Kessner & Kuester, for appellees Walker.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, and LANPHIER, JJ., and GRANT, J., Retired.

HASTINGS, C.J.

The plaintiffs, Linda Gibb, Lisa Gibb, George A. Gibb, and Elizabeth Gibb, brought this action for damages arising from an automobile accident which occurred on April 21, 1990. Lisa Gibb was injured while a passenger in a car driven by her sister Linda, which car collided with a van driven by defendant Robert L. Strickland and owned by defendants Lynn and Patricia Walker. Following a bench trial, judgment was entered in favor of the Walkers. There was no question but that Strickland was negligent.

The plaintiffs contend that the district court erred in (1) finding that the Walkers had not negligently entrusted their vehicle to Strickland, (2) finding that there was not an agency relationship between the Walkers and Strickland, and (3) allowing the admission into evidence of Strickland's guilty plea. On appeal, the plaintiffs also contend that Strickland was acting in the scope of a joint adventure in which he was involved with the Walkers. However, this theory was not pled, and where a particular theory of the case is not stated in a plaintiff's petition, he or she cannot raise it for the first time on appeal. *Hammond v. City of Broken Bow*, 239 Neb. 437, 476 N.W.2d

822 (1991); *Foltz v. Northwestern Bell Tel. Co.*, 221 Neb. 201, 376 N.W.2d 301 (1985). Therefore, we consider only the remaining errors alleged.

Prior to April 21, 1990, the Walkers had been acquainted with Strickland for about a month. Strickland worked on cars in a garage at the Walkers' residence and tried to teach Lynn Walker car repair techniques. He spent the night at the Walkers' home five or six times.

On the morning of April 21, after visiting his wife Patricia in jail, Lynn Walker purchased "a fifth" and a 12-pack of beer. He then went home and started drinking with Strickland at about 12:30 p.m. When these purchases were consumed by 3 o'clock in the afternoon, Walker returned to the liquor store to buy a pint of rum and a case of beer. Strickland and Walker continued to drink throughout the day. At some point during the evening, Walker became angry with his stepson Gordon Snider, and Strickland intervened in the argument, which made Walker more angry. According to his testimony, Walker did not clearly remember anything that happened after that point, although he did recall going outside and sitting in his camper. Walker admitted being very drunk.

Walker's stepson Gordon Snider testified that 30 or 45 minutes after the altercation, he saw his stepfather outside going toward the camper. At some point after that, Strickland told Gordon that Strickland had permission to use the Walkers' van and invited Gordon and his younger brother to go with him for a ride. Gordon stated that Strickland ran into "about five" other vehicles while driving the van that night. Gordon testified that Strickland told him that Walker gave him the keys to the van, but later stated that Strickland told him he took the keys from Walker when Walker was passed out. When Walker was asked how Strickland got the keys, he stated: "Alls I could remember is when I went to the camper, I was sitting there and I was going to put the keys into the ignition, but then all of a sudden I just laid over."

Lisa Gibb testified that she was injured on the evening of April 21 when the car in which she was a passenger collided with a blue van. Gibb stated that they were heading south on 27th Street in Lincoln and had no stop sign or stoplight. As a result

of her injuries, she was hospitalized for 3 days. Exhibit 3, a police report, establishes that the Gibb vehicle collided with the van owned by the Walkers while the van was being driven by Strickland. Exhibit 7, admitted over objection, establishes that Strickland pled guilty to unauthorized use of a propelled vehicle in connection with this incident. The district court found that the plaintiffs had failed to prove that Lynn or Patricia Walker had permitted Strickland to use their vehicle and, therefore, had failed to prove negligent entrustment. The court also found no evidence of an agency relationship existing between the Walkers and Strickland.

In asserting that the district court erred in failing to find that the Walkers negligently entrusted their vehicle to Strickland, the plaintiffs argue that implied consent is sufficient to establish that a driver has the permission of the owner in operating a vehicle, citing 7A Am. Jur. 2d *Automobiles and Highway Traffic* § 675 at 910 (1980), which states:

> [I]mplied permission to use or operate another's motor vehicle may be gathered from all the circumstances surrounding its possession, and the courts will not be astute to discover a flaw in the chain of events leading up to such possession, or to withhold the principle of implied permission where the facts fairly warrant the extension of that principle.

The plaintiffs contend that implied permission is established when the owner of a vehicle fails to stop someone who is drunk from driving away in the vehicle and that Lynn Walker had a duty to stop Strickland, which he failed to meet. The plaintiffs further argue that the Walkers engaged in a course of conduct which gave Strickland the opportunity to secure possession of the van.

Citing *Deck v. Sherlock*, 162 Neb. 86, 75 N.W.2d 99 (1956), the plaintiffs argue that whether or not permission is granted in allowing another to drive one's vehicle is irrelevant in assigning liability to the owner. In *Deck*, Richard Sherlock, the owner of the vehicle, accompanied by Robert Hull, drove around Ogallala and drank beer on the afternoon of the accident. Later in the evening, they were joined by Harold Duffy. The three continued to drink until about 9:30 p.m., when Sherlock

decided to go home. At that time, Duffy was driving. Sherlock testified that when he got out of the car, he told Duffy that Duffy could drive the car to the Vets Club. He also stated that he did not tell Hull that Hull could drive the car and that he knew Hull's driver's license had been revoked for driving while under the influence of intoxicating liquor. Hull and Duffy continued to drink at the Vets Club until the management refused to serve Hull. When they left the Vets Club, Hull drove and was involved in an automobile accident with the plaintiff. As the controlling rule, this court found that

> [t]he law requires that an owner use care in allowing others to assume control over and operate his automobile, and holds him liable if he entrusts it to, and permits it to be operated by, a person whom he knows or should know to be an inexperienced, incompetent, or reckless driver, to be intoxicated or addicted to intoxication, or otherwise incapable of properly operating an automobile without endangering others.

*Id*. at 90-91, 75 N.W.2d at 102.

Although the plaintiffs assert that in *Deck*, this court "found liability even though no express permission to drive the car was given," brief for appellants at 3, this court in fact reversed the directed verdict in favor of Sherlock, finding that whether or not Sherlock exercised due care when he entrusted his car to Hull and Duffy was an issue of fact for the jury. We stated:

> A jury might well find that Sherlock was negligent in entrusting his car to Duffy or Hull, or both, in the light of the knowledge he had acquired throughout the afternoon and evening, even though he did not think Hull or Duffy were intoxicated when he permitted them to take the car.

162 Neb. at 92, 75 N.W.2d at 103. We noted that while Sherlock had not given Hull express permission to drive the car, express permission had been given to Duffy. We went on to suggest that the liability of Sherlock could be predicated on the initial act of allowing Duffy to use the car:

> We point out that if Sherlock was negligent in permitting Duffy to use his car because of the latter's intoxication, or the likelihood that he would become intoxicated, Sherlock is liable for every act of Duffy which contributed to the

accident, including the act of Duffy in permitting Hull to drive while he was drunk.

*Id.* at 92-93, 75 N.W.2d at 103. Although it may be inferred from *Deck* that liability may attach to an owner from a driver's negligence even in the absence of express permission to that driver, the case may be factually distinguished from the case at bar, since Sherlock did give express permission to Duffy to use the car when he was accompanied by Hull, with knowledge that both had been drinking.

In *Kosrow v. Acker*, 188 Ill. App. 3d 778, 544 N.E.2d 804 (1989), the court noted that a person may be found liable for negligent entrustment where that person entrusts an automobile to one whose incompetency, inexperience, or recklessness is known or should have been known by the owner or entrustor of the automobile, and that in the context of an action for negligent entrustment, it was proper to define entrustment as express or implied permission. The court stated that " '[i]mplied permission exists where there is an inference or circumstances arising out of a course of conduct or a relationship between the parties whereby there is mutual acquiescence or lack of objection under circumstances that generally would indicate permission.' " 188 Ill App. 3d at 784, 544 N.E.2d at 807, quoting *Standard Mut. Ins. Co. v. Sentry Ins.*, 146 Ill. App. 3d 905, 497 N.E.2d 476 (1986). In *Kosrow*, plaintiffs' decedents were killed in an auto accident when their car was hit by a Cadillac owned by defendant Jeffrey Smith and driven by defendant Ronald Acker, Smith's stepbrother, who had admitted liability. The jury had been instructed to find Smith liable if Smith gave Acker either express or implied permission at any time to use his car on the day of the accident. Viewed in a light most favorable to the plaintiffs, the evidence established, inter alia, that a police officer had seen Acker driving the car with Smith as a passenger within 6 months before the accident; that Acker had once driven the car around the block in connection with repairs he made at Smith's request; that on the night of the accident, Smith drove his father's vehicle instead of his own; that a Sergeant Arquilla testified that Smith told him he left his keys in Acker's room on the dresser; and that Smith reported his car stolen because his

father wanted him to, but that he did not want to see Acker prosecuted. However, there was also evidence that Acker knew that Smith did not want him to drive the Cadillac and that Smith had left his keys on his own dresser in his own room, which he only occasionally shared with Acker. Although the jury found Smith liable for negligent entrustment, the appellate court reversed, finding that the facts failed to establish that Smith gave Acker either express or implied permission to use his car on the day of the accident.

In *Penland v. Allsup*, 527 So. 2d 715 (Ala. 1988), the victims of a two-vehicle accident brought an action for negligent entrustment against the owner of a car involved in the accident. The owner of the car, Ronald Allsup, and his passenger, one Mullinax, had each consumed four beers in the early afternoon of the accident. Mullinax had three more beers later in the day. Together, with Allsup driving, they traveled from Jacksonville to Birmingham to deliver a parachute to a friend. When they arrived at the friend's home, Allsup went inside, leaving his keys in the car so that Mullinax could listen to the radio while he was waiting. An unopened bottle of liquor was in the backseat of the car when Allsup left. When he came back outside approximately 20 minutes later, Allsup discovered that Mullinax had left with his car. Mullinax was involved in the accident with the plaintiffs several hours later and was charged with driving under the influence of alcohol and first degree assault. Although the plaintiffs conceded that no actual entrustment had occurred, they argued that Allsup was liable due to his past consent in allowing Mullinax to drive his car or due to Allsup's conduct in leaving the vehicle available to Mullinax on the occasion in question. The court rejected the plaintiffs' argument for a "continuing entrustment," stating:

> [T]he only evidence of Mullinax's past use of Allsup's vehicle is the fact that Mullinax had used Allsup's Corvette on three prior occasions. Each time he used the vehicle, however, he had had Allsup's express permission, and each time it was for a specific purpose. There is no evidence presented that Mullinax used Allsup's car "at will," nor is there evidence that Mullinax was drunk (or otherwise incompetent) on any of the previous occasions

when he was allowed the use of Allsup's vehicle. *Id*. at 716. The court further rejected the plaintiffs' contention that Allsup was negligent in leaving his keys in the car, finding that it was not foreseeable that Mullinax would simply take the car without Allsup's consent, and affirmed the summary judgment granted by the trial court.

In the instant case, Lynn Walker testified that he could not recall Strickland's asking for his keys and did not know how Strickland got the keys. The district court found that the plaintiffs had failed to prove that Lynn or Patricia Walker permitted Strickland to drive their car.

In a bench trial of a law action, a trial court's factual findings have the effect of a verdict and will not be set aside unless clearly erroneous. In reviewing a judgment awarded in a bench trial of a law action, an appellate court does not reweigh evidence, but considers the evidence in the light most favorable to the successful party, who is entitled to every reasonable inference deducible from the evidence. *Diefenbaugh v. Rachow*, 244 Neb. 631, 508 N.W.2d 575 (1993); *Bell Abstract & Title v. Caro, Inc.*, 243 Neb. 576, 500 N.W.2d 834 (1993).

The district court was not clearly erroneous in finding that the plaintiffs had failed to establish that the Walkers had entrusted their vehicle to Strickland. Further, the evidence was insufficient to establish a "course of conduct" indicative of mutual acquiescence or lack of objection under circumstances that generally would indicate permission. Both Lynn and Patricia Walker testified that Strickland had driven their vehicle on only one previous occasion. On that occasion, Strickland took Patricia Walker to the store. She gave him the keys to the van for that trip, and he returned them to her when the trip was completed. He was not intoxicated at that time.

The plaintiffs also argue that an owner may be liable under certain circumstances for the negligence of a thief in operating the owner's vehicle, apparently seeking to analogize the facts of this case to "key-in-the-ignition" cases, as discussed in *Hosking v. Robles*, 98 Cal. App. 3d 98, 159 Cal. Rptr. 369 (1979). In *Hosking*, a California appellate court noted that in that state, "the owner of a motor vehicle is under no duty to a person injured by a thief's operation of a stolen vehicle absent 'special

circumstances' effecting [sic] the foreseeability of the theft and the thief's negligent operation of the vehicle." 98 Cal. App. 3d at 102, 159 Cal. Rptr. at 371. The court went on to explain that " '[s]pecial circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons. . . .' " *Id*. at 102, 159 Cal. Rptr. at 372. The court cited several cases in California and other jurisdictions where liability had been imposed in special circumstances. See, e.g., *Hergenrether v. East*, 61 Cal. 2d 440, 393 P.2d 164, 39 Cal. Rptr. 4 (1964) (partly loaded 2-ton truck left in area populated by drunks, where defendant intended to leave it for a long period of time); *Enders v. Apcoa, Inc.*, 55 Cal. App. 3d 897, 127 Cal. Rptr. 751 (1976) (known that parking attendant left keys in cars and there were past thefts); *Richardson v. Ham*, 44 Cal. 2d 772, 285 P.2d 269 (1955) (unattended and unlocked bulldozer); *Kacena v. George W. Bowers Co., Inc.*, 63 Ill. App. 2d 27, 211 N.E.2d 563 (1965) (auto dealer left keys in car in locality frequented by juveniles with high incidence of car theft); *Schaff v. R. W. Claxton, Inc.*, 144 F.2d 532 (D.C. Cir. 1944) (driver delivering goods to a restaurant left keys in car on parking lot next to the restaurant).

In *Hersh v. Miller*, 169 Neb. 517, 99 N.W.2d 878 (1959), this court found that no liability attaches to the owner of a car parked in violation of a key-in-the-ignition ordinance when the car is taken by a thief who negligently causes injury and damage to another. In *Flannery v. Sample Hart Motor Co.*, 194 Neb. 244, 231 N.W.2d 339 (1975), we stated that in the absence of applicable statutes or ordinances, the failure of a person having charge of a vehicle to remove the ignition key does not constitute a negligent omission or breach of a duty owed to a third party. Most recently, we addressed the issue of an owner's liability in regard to damages caused by a bulldozer left unattended with the keys in or near the ignition, in *Gerken v. Hawkins Constr. Co.*, 243 Neb. 157, 498 N.W.2d 97 (1993). In *Gerken*, we adhered to the holdings of *Hersh* and *Flannery* and concluded that the actions of an unknown person or persons who operated the bulldozer before it collided with the plaintiffs' house were an independent intervening cause and

were the proximate cause of the accident. Although we did not explicitly refer to "special circumstances," we noted that the plaintiffs did not allege facts in their petitions to show that the acts of the unknown person or persons in the operation of the bulldozer were foreseeable by the defendant.

The plaintiffs here contend that had Walker been sober, he would have known that Strickland was taking the children for a ride in the Walker vehicle, and that "[i]t was foreseeable to Walker that Strickland would leave in the Walker vehicle that night." Brief for appellants at 7. However, the keys to the Walkers' van were not in the ignition, but were attached to Lynn Walker's belt loop. The van was parked at their residence; it had not been driven for several days because there had been trouble with the transmission, and Strickland had driven the van on only one previous occasion, with the permission of, and accompanied by, Patricia Walker. Also, Lynn Walker testified that he did not ask Strickland to buy more alcohol or to care for his children. It would be an unwarranted extension of the "special circumstances" doctrine, and unreasonable to find foreseeability, under the circumstances of this case.

As their second assignment of error, the plaintiffs assert that the district court erred in finding that there was no agency relationship between the Walkers and Strickland, arguing that Strickland was acting as an agent of the Walkers in caring for their children.

An agency may be implied from the words and conduct of the parties and the circumstances of the particular case evidencing an intention to create the relationship. *McCurry v. School Dist. of Valley*, 242 Neb. 504, 496 N.W.2d 433 (1993).

Gordon Snider, Patricia Walker's son, testified that at the time of the incident in question, he was 16 years old and living with his mother and stepfather part time. During the afternoon and evening of April 21, 1990, he was at their residence and observed his stepfather and Strickland drinking. At some point, his stepfather became angry with him. Gordon stated that his stepfather did not hit him and that Strickland intervened. Later, Strickland told him that Strickland had permission to use the van and invited Gordon and his 13-year-old brother John to ride along. Gordon further testified that neither of the Walkers

had told him that Strickland was to watch over him while his mother was in jail. Although he denied that Strickland watched over him at the house, he agreed that Strickland had protected him when his stepfather became angry.

As noted above, Lynn Walker stated that he did not ask Strickland to help watch the children. Patricia Walker testified that she did not ask Strickland to help watch the children, stating, "My kids are old enough to take care of themselves." Although the plaintiffs argue that Strickland was "babysitting" and protecting the children from Walker, it is not clear from the record that Gordon needed to be physically protected from Walker. Even if that is true, at the time that Strickland took the children for a ride, Walker was apparently passed out in his camper, obviating the need for protection.

The facts are insufficient to establish the intent to create an agency relationship between the Walkers and Strickland in regard to caring for the children, and the district court properly found that no agency relationship was established.

As their final assignment of error, the plaintiffs assert that the district court erred in admitting into evidence Strickland's guilty plea to unauthorized use of a propelled vehicle. The plaintiffs argue that they objected to the defendants' motion to amend the pretrial conference order to allow the submission of Strickland's guilty plea at trial and further contend that the court abused its discretion in admitting the exhibit at trial over their renewed objection.

In stating that "[t]he waiver of a jury trial by the plaintiff accompanied the parties['] agreement as to exhibits," brief for appellants at 12, the plaintiffs apparently suggest that the waiver of a jury trial was conditioned on an agreement to limit the exhibits to those discussed at the pretrial conference, although that fact does not appear in the record. The plaintiffs refer us to the affidavit of attorney Richard Scott, who represented the Walkers at the time of the pretrial conference, which affidavit states that he had received a letter from the Walkers' insurance company denying coverage because Strickland had been convicted of unauthorized use of a motor vehicle; that he and the plaintiffs' counsel stipulated to waive a jury; and that they stipulated to the admissibility of Lisa Gibb's

doctor's reports and to the fairness and reasonableness of her medical bills. The affidavit does not state that the stipulations were conditional. Further, the amended pretrial order does not reflect that the plaintiffs objected to the admission of the guilty plea on that basis. According to the amended order, exhibit 9, a certified copy of the record of the conviction of Strickland in the county court for Lancaster County, was to be introduced at trial "subject to objection for competency, relevancy and materiality." Thus, the alleged error has not been preserved for the record, nor does the record reflect that the plaintiffs attempted to withdraw their waiver of a jury trial. It is within the discretion of the trial court to permit a party in a civil case to withdraw his waiver of a right to jury trial, if the application to do so is timely made and the waiver has not been acted upon to the prejudice of any party. *McKinney v. County of Cass*, 180 Neb. 685, 144 N.W.2d 416 (1966).

The trial court has a broad discretion in regard to amendment of a pretrial order, and its ruling with respect thereto will not be disturbed absent an abuse of discretion. *Nixon v. Harkins*, 220 Neb. 286, 369 N.W.2d 625 (1985).

Although the plaintiffs objected at trial to the admission of the guilty plea "on the basis of relevancy and on the basis that it wasn't timely presented to the court at the time of the pre-trial," as noted above, the issue of timeliness was not preserved on the record at the time of the pretrial order. The plaintiffs argue on appeal that the document was "unduly prejudicial and misleading." Brief for appellants at 12. However, these issues and the issue of relevancy have not been assigned as error. To be considered by an appellate court, an error must be assigned and discussed in the brief of one claiming that prejudicial error has occurred. *State v. Melton*, 239 Neb. 576, 477 N.W.2d 154 (1991). Thus, the record does not support the contention that the district court abused its discretion in allowing the amendment of the pretrial order. The reception into evidence of a party's guilty plea is proper as an admission. The plaintiffs' final assignment of error is therefore without merit, and the judgment of the district court is affirmed.

AFFIRMED.