ASHLAND STATE BANK, A NEBRASKA BANKING CORPORATION, APPELLEE AND CROSS-APPELLANT, V. ELKHORN RACQUETBALL, INC., A NEBRASKA CORPORATION, APPELLEE AND CROSS-APPELLEE, AND KENNETH OPSTEIN, APPELLANT AND CROSS-APPELLEE.

520 N.W.2d 189

Filed July 22, 1994.    No. S-92-784.

Patrick M. Flood and Edith T. Peebles, of Zweiback, Hotz & Lamberty, P.C., for appellant.

Dean J. Sitzmann, of Steier, Rogers & Pistillo, P.C., for appellee Ashland State Bank.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, FAHRNBRUCH, LANPHIER, and WRIGHT, JJ.

WRIGHT, J.

Ashland State Bank (Bank) sued Elkhorn Racquetball, Inc. (Elkhorn), and Kenneth Opstein to recover on a promissory note. The district court for Douglas County entered judgment against Elkhorn and Opstein for the principal balance due plus

simple interest, a total of $138,261.94, plus costs. Opstein appeals; the Bank cross-appeals.

## SCOPE OF REVIEW

In a bench trial of a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Gibb v. Strickland*, 245 Neb. 325, 513 N.W.2d 274 (1994).

## FACTS

In 1977, Harry Farnham built a racquet club in Elkhorn, Nebraska. In 1982, Opstein purchased the racquet club from Farnham, giving him the promissory note in question as a part of the purchase price. Farnham testified that the note was drawn so that Opstein would be personally responsible for the obligation and so that Farnham would be able to look to Opstein personally for payment.

The racquet club was transferred to a limited partnership, 99 percent of which was owned by Opstein, for the beginning of the tax year 1983. Upon instructions from Opstein's accountant, Farnham formed a subchapter S corporation for the racquet club in 1987. Opstein carried the losses relating to the racquet club to offset income on his personal income tax returns.

The promissory note at issue indicates that it was part of a number of transactions. On December 20, 1982, Farnham made a notation on the note which extended the due date from November 15, 1983, to November 15, 1985. Farnham testified that he notified Opstein of the extension and that Opstein did not object.

In an entry dated December 21, 1982, the note recites: "In consideration of Seventy-two thousand & five hundred dollars, ($72,500) undersigned sells, assigns, & transfers the above note to Frank Bemis, with recourse. /s/ Harry J. Farnham." Farnham testified that he transferred the note to Bemis with notice to Opstein and that Opstein did not object.

Thereafter, Farnham repaid Bemis, and Bemis made a "paid in full" notation on the note and reassigned the note to Farnham. On the reverse side of the second page of the note is the entry: "In consideration of payment of $84,000.00

($75,000.00 principal and $9,000.00 interest) by Harry J. Farnham to undersigned as of 11/15/84, the above note is reassigned and transferred to Harry J. Farnham as of said date. /s/ Frank Bemis."

The next entry recites: "Harry J. Farnham acknowledges receipt from Elkhorn Racquet Club, Inc. of the sum of $9,000.00 in full payment of interest on above note for period of 11/15/82 to 11/15/83. /s/ Harry J. Farnham."

Farnham then made this notation on March 1, 1984:

> For and in consideration of the sum of Seventy-five Thousand Dollars ($75,000.00) received from Ashland State Bank, Ashland, Nebraska, the undersigned, Harry J. Farnham, hereby assigns with recourse this note and all proceeds hereunder to the Ashland State Bank, as collateral security for a Promissory Note in like amount dated March 1, 1984. /s/ Harry J. Farnham.

The Bank had loaned Farnham $75,000, taking the note as collateral. Farnham testified that at the time he assigned the note to the Bank, the note was not overdue and had not been dishonored, he was not aware of any defenses by any person, and he had not informed anyone at the Bank of any alleged setoffs or defenses. At the time of the assignment to the Bank, Farnham had other loans with the Bank which were current.

Farnham later defaulted on his loan obligations to the Bank and filed bankruptcy. The Bank initiated a replevin action against Elkhorn. Opstein then personally executed a "Stipulation for Payment," which was filed with the trial court on August 28, 1989, and thereafter, he personally made two payments of $2,500 to the Bank.

The stipulation was approved by Opstein as to form and content and provided for full payment of the note either at a date certain or when a judgment which was the subject of an appeal pending before this court was affirmed. In its petition, the Bank contended that the action pending before the Supreme Court was "sustained" November 9, 1989, and that the note became immediately due and payable. The Bank demanded payment, but Opstein and Elkhorn refused, and suit was commenced against Opstein and Elkhorn on March 2, 1990.

The Bank alleged that on November 15, 1982, Elkhorn,

Opstein, and Farnham executed and delivered to Farnham, in his individual capacity, a promissory note in the amount of $75,000 with interest accruing at 12 percent per annum. The Bank alleged that on March 1, 1984, Farnham assigned to the Bank all his rights in the promissory note, including all rights in the personal property described in the security interest, and that the Bank remained the holder and owner of the note in question.

Opstein asserted various defenses to the action, inter alia, that the Bank was not the owner of the note, that Farnham did not have an interest in the note which he could assign, and that Opstein had been discharged from liability on the note. Further, Opstein alleged that the Bank was not a holder in due course, that Elkhorn was not indebted to Farnham, that the note was fraudulently obtained by a fiduciary and was unenforceable, and that Opstein was entitled to a setoff against the Bank in excess of $1 million.

The trial court found that Opstein was a principal obligor or maker on the note and that the Bank took the note as a holder in due course and was entitled to a judgment against Elkhorn and Opstein for the principal balance due plus simple interest as provided in the note.

## ASSIGNMENTS OF ERROR

Opstein assigns as error the trial court's finding that he was a principal obligor or maker on the note and that the Bank was a holder in due course. He alleges that the court erred in failing to allow the Bank's claim to be offset by sums Opstein asserts were owed to him by Farnham and in failing to find that Opstein was discharged from liability on the note. The Bank cross-appeals, claiming that the court erred in holding that the interest on the note was simple interest.

## ANALYSIS

In our review of a bench trial in a law action, the trial court's factual findings have the effect of a jury verdict and will not be set aside on appeal unless they are clearly wrong. *Gibb v. Strickland*, 245 Neb. 325, 513 N.W.2d 274 (1994). In reviewing a judgment awarded in a bench trial, the appellate court does not reweigh the evidence but considers the judgment in a light

most favorable to the successful party and resolves evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. *Florist Supply of Omaha v. Prochaska*, 244 Neb. 776, 509 N.W.2d 209 (1993).

Since Opstein claims that the trial court erred in finding that the Bank was a holder in due course, we examine the Bank's status in that regard. We first note that the applicable law, the Uniform Commercial Code (U.C.C.), has been amended and recodified since the issuance of the note. Changes in the law became effective in 1991 and 1992. The action here was commenced in March 1990. We have held that statutes covering substantive matters in effect at the time of the transaction govern, not later enacted statutes. *Norwest Bank Neb. v. Bowers, ante* p. 83, 516 N.W.2d 623 (1994); *Schall v. Anderson's Implement*, 240 Neb. 658, 484 N.W.2d 86 (1992). Therefore, the U.C.C. provisions appearing in the 1980 reissue apply in this case.

Neb. U.C.C. § 3-302(1) (Reissue 1980) provided: "A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." Accord *John Deere Co. v. Boelus State Bank*, 233 Neb. 818, 448 N.W.2d 163 (1989). A holder is a person who is in possession of an instrument drawn, issued, or endorsed to him, to his order, to bearer, or in blank. Neb. U.C.C. § 1-201(20) (Reissue 1980).

It was not disputed at trial or on appeal that the Bank was in possession of the note or that the note was a negotiable instrument. In the stipulation referred to above, the Bank, Opstein, and Elkhorn stipulated that the Bank was the holder of a negotiable instrument (the promissory note dated November 15, 1982) and that Opstein's signature appeared on the note.

Patricia Adams, vice president of the Bank, testified that the Bank loaned Farnham $75,000 and took the note as collateral for the loan. Thus, the evidence established that the note was given for value. Also, no evidence in the record indicates that the Bank failed to act in good faith (which § 1-201(19) defined

as honesty in fact in the conduct or transaction concerned).

We next consider whether the Bank took the note without notice that it was overdue or had been dishonored, or without notice of any defense or claim on it on the part of any person. Opstein asserts that the Bank had notice of a claim or defense because the note had been extended and transferred multiple times on its face and because a nonparty to the note had written "paid in full" on its face.

The purchaser has notice of a claim or defense if (1) the instrument is so incomplete, bears such visible evidence of forgery or alteration, or is otherwise so irregular as to call into question its validity, terms, or ownership or to create an ambiguity as to the party to pay; or (2) the purchaser has notice that the obligation of any party is voidable in whole or in part or that all parties have been discharged. Neb. U.C.C. § 3-304(1) (Reissue 1980).

As we examine the record and the note in question, we find that although the note had been transferred and assigned several times and contained a "paid in full" notation, the note also contained satisfactory explanations of the transactions and showed that the note had been reassigned and transferred to Farnham before Farnham assigned the note to the Bank. There was no evidence that the note had been paid by the obligors on the note.

We do not accept Opstein's argument that the note was overdue because Opstein did not agree to extend the maturity date via his signature on the note. Although Opstein testified that he was never asked for his consent to an extension of the maturity date, Farnham testified that he notified Opstein of every one of the transactions set forth on the note and that Opstein did not object to any of them. In a bench trial of a law action, the court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Moore v. State*, 245 Neb. 735, 515 N.W.2d 423 (1994). The court heard the testimony of Farnham and Opstein and found that the Bank was a holder in due course. We cannot say that the court was clearly wrong.

Opstein argues that it was the Bank's burden to prove it did not have notice of a claim or defense. We disagree. A signature

on a promissory note is presumed genuine unless specifically denied in the pleadings. Neb. U.C.C. § 3-307(1) (Reissue 1980). When signatures are admitted or established, production of the instrument entitles a holder to recover on it unless the defendant establishes a defense. § 3-307(2). Opstein stipulated that his signature appeared on the note. Thus, Opstein had the burden of proof to establish a defense to the promissory note.

The defense asserted by Opstein was that he did not consent to the extension of the maturity date on the note. Farnham testified that every transaction was carried out with Opstein's knowledge and consent. In this case, we do not reweigh the evidence, but consider the judgment in a light most favorable to the successful party and resolve the evidentiary conflicts in favor of the successful party, who is entitled to every reasonable inference deducible from the evidence. See *Florist Supply of Omaha v. Prochaska*, 244 Neb. 776, 509 N.W.2d 209 (1993). Opstein has not proven that the Bank had notice of his claim or defense.

As a part of his argument that the Bank was not a holder in due course, Opstein contends that the Bank had notice of a claim against the note because Farnham had signed the note as a fiduciary of Elkhorn when the Bank knew that Farnham was transacting business for his own benefit. Section 3-304(2) provided: "The purchaser has notice of a claim against the instrument when he has knowledge that a fiduciary has negotiated the instrument in payment of or as security for his own debt or in any transaction for his own benefit or otherwise in breach of duty."

Opstein argues that the Bank had notice because Farnham was president of Elkhorn and had pledged the note as collateral for a personal loan. The record does not support Opstein's argument. Farnham testified that he must have notified someone at the Bank of the purpose of the loan. He could think of many reasons for needing the loan, including the monthly payments for the racquet club. Farnham was asked the following question: "Would you have told Lee Sapp that at Ashland State Bank; that's why you needed the loan?" Farnham replied, "I don't know. I could have. As I said, I could have given them a hundred reasons and they would all be

true so I — I have no specific recollection — I'm sure the bank does — as to what I needed the money for." Opstein did not call Sapp to testify as to his recollection of the purpose of the loan. There was no other evidence to establish the purpose of the loan. Therefore, the record does not support Opstein's claim that the Bank knew that Farnham was seeking a loan for personal reasons. The Bank is entitled in this case to every reasonable inference deducible from the evidence. See *Florist Supply of Omaha, supra*.

Knowledge of the fact that any person negotiating an instrument is or was a fiduciary does not of itself give the purchaser notice of a claim or defense. § 3-304(4)(e). The mere existence of a fiduciary relation is not enough to prevent the holder from taking in due course, and such holder is free to take the instrument on the assumption that the fiduciary is acting properly. There is no evidence the Bank had notice that Farnham was breaching any fiduciary duty when he negotiated the note to the Bank. The note was given to Farnham when Opstein purchased Farnham's interest in the racquet club.

Opstein contends that the Bank was on notice that the note was overdue when the Bank made additional loans using the note as collateral. The record shows that at the time the note was assigned to the Bank on March 1, 1984, the note's due date had been extended to November 15, 1985. The note was not overdue when the Bank accepted it, and we find that this argument is without merit. The evidence established the Bank was a holder in due course, and the Bank therefore took the note free from all claims asserted by Opstein. See Neb. U.C.C. § 3-305 (Reissue 1980).

Opstein next claims that the trial court erred in finding that he was a principal obligor or maker on the note. He asserts that he was merely an endorser because the signature is ambiguous and because the note itself refers only to Elkhorn.

The intent of the parties is determinative of whether a party is an accommodation maker or the principal obligor of an instrument. *Marvin E. Jewell & Co. v. Thomas*, 231 Neb. 1, 434 N.W.2d 532 (1989). Farnham testified that it was his intent that Opstein be obligated personally as well as in his capacity as vice president of Elkhorn. Opstein's tax returns indicate he carried

the obligation as a deduction on his personal income tax returns, and he personally made payments on the note on two separate occasions.

On the basis of the evidence presented at trial, we find that Opstein was a principal obligor on the note and that the trial court correctly so determined. Opstein benefited from his signature on the note by receipt of the ownership of the racquet club, and he used the obligation on the note as a deduction on his personal income tax returns. Opstein's testimony failed to contradict the evidence that he was a principal obligor on the note.

Opstein next contends that his signature served as an accommodation because Farnham needed Opstein's signature to negotiate the note and because it was Farnham who received the cash after the note was assigned. Having decided that the Bank was a holder in due course, we determine that Opstein's claim that his signature served as an accommodation is not a defense to the Bank's action on the note. See § 3-305. We also point out that Opstein did not raise this defense at trial, and therefore, Opstein has waived his right to argue such issue on appeal. An issue not presented to or passed on by the trial court is not appropriate for consideration on appeal. *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994). This court is obligated to dispose of cases on the basis of the theory presented by the pleadings on which the case was tried. *Central States Resources v. First Nat. Bank*, 243 Neb. 538, 501 N.W.2d 271 (1993).

Opstein's argument that the trial court erred in failing to offset the Bank's claim against any sums owed by Farnham to Opstein relies upon the assertion that the Bank was not a holder in due course. Having found that the trial court correctly decided the Bank was a holder in due course, we find that the Bank took the note free and clear of these claims and defenses. See § 3-305.

Finally, Opstein argues that as an accommodation party, he is a surety under the U.C.C. and is entitled to assert the special suretyship defenses set forth in Neb. U.C.C. § 3-606 (Reissue 1980). First, we have found that Opstein was a principal obligor on the note and not an accommodation party, and second, this defense is not available against a holder in due course. See

§ 3-305. This argument has no merit.

We find that the reasonable inferences deducible from the evidence support the trial court's findings that Opstein was a principal obligor or maker on the note and that the Bank took the note as a holder in due course and was entitled to judgment against Elkhorn and Opstein on the note.

We next address the cross-appeal that the trial court erred in finding that interest on the note was simple interest rather than compound interest. "The general rule is that in the absence of contract or statute, compensation in the form of compound interest is not allowed to be computed upon a debt." *Abbott v. Abbott*, 188 Neb. 61, 68, 195 N.W.2d 204, 209 (1972). Accord *Cherokee Nation v. United States*, 270 U.S. 476, 46 S. Ct. 428, 70 L. Ed. 694 (1926). The Bank argues that because the parties treated the note as bearing interest on a compound basis, Opstein should be estopped from arguing to the contrary. We disagree. There was no evidence presented of a contract, and there is no statute which allows compound interest on the note in this case. The trial court was correct in ordering the award of simple interest.

The judgment of the trial court is hereby affirmed in all respects.

AFFIRMED.