IN RE INTEREST OF KASSARA M.,
A CHILD UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. LESA C.,
ALSO KNOWN AS CHEYENNE T., APPELLANT.
601 N.W. 2d 917

Filed November 5, 1999. No. S-98-1230.

Lynnette Z. Boyle, of Tietjen, Simon & Boyle, for appellant.

James S. Jansen, Douglas County Attorney, and Vernon Daniels and Kristin M. Lynch for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## BACKGROUND

On January 21, 1996, Kassara M., then 7 years old, woke up at 3 a.m. and found herself at home alone. Kassara called the 911 emergency dispatch service, and the police came to her home and waited until 7 a.m., when Kassara's mother, Lesa C., also known as Cheyenne T. (Cheyenne), finally appeared. Kassara was taken into protective custody. On January 22, a petition was filed alleging that Kassara lacked proper parental care, and a detention hearing was held on February 2. An adjudication hearing was held on February 22, at which Cheyenne admitted the allegations of the petition, and Kassara was found to be a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993). Kassara has been in foster care throughout the pendency of this action.

On April 17, 1996, a rehabilitation plan was ordered for Cheyenne, generally directing Cheyenne to attend therapy, obtain a legal source of income and adequate housing, complete

parenting classes, and have reasonable rights of supervised visitation. The provisions of this rehabilitation plan were reaffirmed on July 12 and October 24, 1996, and on August 19 and October 17, 1997. Additionally, Cheyenne was ordered to undergo a psychiatric evaluation. On March 2, 1998, the trial court further ordered Cheyenne to refrain from using alcohol or drugs, submit to urinalysis testings, take the medications prescribed by her psychiatrist, and abstain from violating the law. On August 31, the trial court reaffirmed these previously established goals.

The degree to which Cheyenne met the objectives set forth in the rehabilitation plans is contested by the parties, although Cheyenne concedes that she did not complete all of the objectives prior to the termination hearing. On September 2, 1998, the county attorney filed a motion for termination of parental rights, alleging that termination was warranted under Neb. Rev. Stat. § 43-292(6) and (7) (Reissue 1998).

A hearing was held on the motion to terminate parental rights on October 22, 1998. On October 23, the trial court found that Kassara came within the meaning of § 43-292(6) and (7) and that the best interests and welfare of Kassara required that Cheyenne's parental rights be terminated. Cheyenne appeals.

## ASSIGNMENTS OF ERROR

Cheyenne assigns, summarized and restated, that the trial court erred in (1) retroactively applying § 43-292(7); (2) admitting certain exhibits that allegedly contained hearsay, speculation, conclusions, and irrelevant material; (3) admitting evidence of Department of Health and Human Services (Department) referrals that occurred prior to the adjudication hearing; (4) finding that there was clear and convincing evidence to prove that Cheyenne failed to comply with the requirements of the rehabilitation plan; and (5) finding that termination of Cheyenne's parental rights was in Kassara's best interests.

## STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in

conflict, the appellate court will consider and give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. *In re Interest of Danielle D. et al.*, 257 Neb. 198, 595 N.W.2d 544 (1999).

■ Before parental rights may be terminated, the evidence must clearly and convincingly establish the existence of one or more of the statutory grounds permitting such and that such is in the juvenile's best interests. *In re Interest of Tabatha R.*, 252 Neb. 687, 564 N.W.2d 598 (1997).

■ Notwithstanding that the Nebraska rules of evidence do not apply in dispositional hearings held in proceedings arising under the Nebraska Juvenile Code, the requirements of due process control in determining the type of evidence which may be used by the State in an attempt to prove that parental rights should be terminated. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). Improper admission of evidence in a parental rights proceeding does not, in and of itself, constitute reversible error, for, as long as the appellant properly objected, an appellate court will not consider any such evidence in its de novo review of the record. *Id.*

## ANALYSIS

### RETROACTIVE APPLICATION

We do not reach Cheyenne's assignment of error concerning the retroactivity of § 43-292(7). Although Cheyenne had notice that the State was proceeding under the amended version of § 43-292(7), the record does not reveal any manner of objection by Cheyenne. The record on appeal does not contain any responsive filing to the State's motion, nor does the bill of exceptions contain any objection by Cheyenne to the application of the amended version of the statute.

■ In the absence of plain error, where an issue is raised for the first time in a higher appellate court, it will be disregarded inasmuch as a lower court cannot commit error in resolving an issue never presented and submitted to it for disposition. *Lackman v. Rousselle*, 257 Neb. 87, 596 N.W.2d 15 (1999); *Jirkovsky v. Jirkovsky*, 247 Neb. 141, 525 N.W.2d 615 (1995). It is well-established that an appellate court will not consider an

issue on appeal that was not presented to or passed upon by the trial court. *Kropf v. Kropf*, 248 Neb. 614, 538 N.W.2d 496 (1995); *Ashland State Bank v. Elkhorn Racquetball, Inc.*, 246 Neb. 411, 520 N.W.2d 189 (1994); *How v. Mars*, 245 Neb. 420, 513 N.W.2d 511 (1994). Failure to make a timely objection waives the right to assert prejudicial error on appeal. *Benzel v. Keller Indus.*, 253 Neb. 20, 567 N.W.2d 552 (1997); *Reavis v. Slominski*, 250 Neb. 711, 551 N.W.2d 528 (1996).

### EVIDENCE ISSUES

Cheyenne assigns that the trial court erred in admitting exhibits 1, 3, 6, 8, 11, and 14, which were all reports prepared for the court by Michelle Hemphill, Kassára's caseworker with the Department. Cheyenne argues that the exhibits lacked proper foundation and contained hearsay, speculation, conclusions, and irrelevant material. Each of these contentions will be addressed in turn.

It is beyond dispute that a parent's interest in the accuracy and justice of the decision to terminate his or her parental rights is a commanding one. *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998). Therefore, although strict rules of evidence are not applied to dispositional hearings, the proceedings must still be fundamentally fair. See *In re Interest of Gloria F.*, 254 Neb. 531, 577 N.W.2d 296 (1998). In determining whether admission or exclusion of particular evidence would violate due process, the Nebraska Evidence Rules serve as a guidepost in that determination. *In re Interest of Floyd B.*, 254 Neb. 443, 577 N.W.2d 535 (1998).

With respect to foundation, Cheyenne argues that there was no evidence presented regarding who authored the documents or what they were. This argument is not supported by the record. Each report was signed by Hemphill, and the testimony given at the hearing indicates that the reports were prepared by Hemphill and that Hemphill prepared such reports in the normal course of her business. This foundation is sufficient to satisfy the requirement of fundamental fairness.

Cheyenne's hearsay argument is also without merit. Cheyenne argues that the reports constituted hearsay, the consideration of which violated due process. As support, she relies

on *In re Interest of L.H. et al.*, 241 Neb. 232, 243, 487 N.W.2d 279, 287 (1992), in which the court stated that " '[i]n proceedings to terminate parental rights, reports may not be received in evidence for the purpose of that proceeding, nor otherwise relied upon by the court, unless they have been admitted without objection or brought within the provisions of Neb. Rev. Stat. § 27-803(22) (Reissue 198[9]) . . . .' "

*In re Interest of L.H. et al., supra,* is distinguishable from the present case. This court has long expressed concern where reports are admitted into evidence at termination hearings and the authors of those reports are not present to lay foundation for the exhibits or to be cross-examined. See, e.g., *In re Interest of Constance G., supra*; *In re Interest of L.H. et al., supra*; *In re Interest of J.K.B. and C.R.B.,* 226 Neb. 701, 414 N.W.2d 266 (1987). In fact, in *In re Interest of L.H. et al., supra,* the trial court was found to have acted improperly not simply in receiving reports, but in taking judicial notice of them.

In the present case, however, the author of the reports, Hemphill, laid the foundation for their admission, testified on behalf of the State, and was cross-examined by counsel for Cheyenne. Thus, the concerns expressed in the above-cited cases are not implicated in the instant case. Furthermore, Hemphill laid appropriate foundation for the admission of the reports pursuant to the hearsay exception for business records found in Neb. Rev. Stat. § 27-803(5) (Reissue 1995). Taken together, these circumstances provide sufficient guarantees of trustworthiness to make consideration of the reports fundamentally fair.

Cheyenne further argues that the reports contained speculation and conclusions by their author and that the reports contained irrelevant material relating to children other than Kassara and referrals prior to the one leading to the instant case. We first note that even if admission of this evidence was improper, it is still incumbent upon Cheyenne to show that inclusion of the exhibits was prejudicial to her due process rights. See *In re Interest of L.H. et al., supra.* Cheyenne has failed to make the required showing.

The reports in question contained several references to the progress of Kassara's half-sister, Misty. Cheyenne's objection

is, in part, directed at the relevancy of this information. The statements relating to Misty, however, set forth how she was progressing in school and with her father, who became her physical custodian. While it is true that Misty's progress is irrelevant to the issues at Kassara's termination hearing, it is also clear that Cheyenne was in no way prejudiced by such evidence. The reports provide no indication of how Misty came to be in the custody of the State or what may have occurred between Misty and Cheyenne. Misty's progress in school and relationship with her father cast no light, unfavorable or otherwise, on Cheyenne's fitness to be a parent. Consequently, no prejudice to Cheyenne could result.

Additionally, in response to Cheyenne's relevancy objection at trial, the court made the following statement:

> Okay. I'm going to receive all of the exhibits. Insofar as any conclusionary [sic] type statements, I think I'm capable of deciphering that out and ignoring it. Also, any references to another child, the fact that another child is referenced doesn't necessarily mean it's not relevant, but to the extent — unless you have something specific you want to point out — to the extent that I don't believe it is relevant, then I'll ignore that. But if you're talking about something very specific, then I can make a ruling on that in terms of whether or not I'll ignore it or consider it.

The only specific materials to which Cheyenne called the trial court's attention were items relating to prior referrals. Cheyenne, however, admitted that the details of such prior filings were unclear, such that it could not be clearly determined if the reports actually referred to other filings, and her counsel stated that "[t]here isn't really enough information on these to tell who the filing is against, which parent." References to referrals which occurred prior to the adjudication which led to the instant case would, generally, be considered irrelevant. See *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

The vagueness of the material to which Cheyenne objected, however, demonstrates that the admission of such evidence was hardly prejudicial. Given the lack of information regarding these possible prior referrals, it cannot be concluded that the inclusion of this evidence was prejudicial to Cheyenne's interests. In any

event, the trial court indicated that it would not consider evidence it felt to be irrelevant, and this court, in its de novo review of the record, is certainly capable of doing the same. See *In re Interest of Constance G.*, 254 Neb. 96, 575 N.W.2d 133 (1998).

Similarly, the trial court stated its intent to disregard any speculative or conclusory statements contained in the exhibits, and this court's de novo review allows it to do the same. See *id.* Improper admission of evidence in a parental rights proceeding does not, in and of itself, constitute reversible error, for, as long as the appellant properly objected, an appellate court will not consider any such evidence in its de novo review of the record. *Id.*

### FAILURE TO COMPLY WITH REHABILITATION PLAN

 Cheyenne assigns that the trial court erred in terminating her parental rights pursuant to § 43-292(6). In order to terminate parental rights under this subsection, the State must prove by clear and convincing evidence that (1) the parent has failed to comply, in whole or in part, with a reasonable provision material to the rehabilitative objective of the plan and (2) in addition to the parent's noncompliance with the rehabilitative plan, termination of parental rights is in the best interests of the child. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). The State is required to prove that the parents have been provided with a reasonable opportunity to rehabilitate themselves according to a court-ordered plan and have failed to do so. *In re Interest of L.H. et al.*, 241 Neb. 232, 487 N.W.2d 279 (1992).

Cheyenne was first ordered by the trial court on April 17, 1996, to maintain a legal source of income, obtain adequate housing, attend therapy, and complete parenting classes; these provisions were repeatedly reordered over the course of these proceedings. Nonetheless, the evidence overwhelmingly demonstrated that by October 22, 1998, Cheyenne had not accomplished these basic goals, which are necessary for a parent to be able to provide for a child.

With respect to employment, in the 2½ years between the initial rehabilitation order and the termination hearing, the evidence established that Cheyenne had been employed at two

different jobs, both for only a few weeks, between her release from jail in Council Bluffs, Iowa, in December 1997 and her reincarceration in Arizona in April 1998. On one other occasion, Cheyenne obtained employment but never actually reported for work before she lost that job, again because she was arrested. At the time of the termination hearing, Cheyenne was without adequate housing because she was still in an Arizona correctional facility, and at no time during the pendency of these proceedings had she maintained a stable residence.

The evidence further indicated that Cheyenne did not regularly attend therapy. Generally, her attendance was sporadic; she would attend therapy for a few weeks and then fail to attend for weeks at a time, often without contacting her therapist or the Department.

█ Cheyenne also failed to complete a parenting class as she had been directed to do. Testifying over the telephone at the termination hearing, Cheyenne indicated that she had taken a parenting class in her Arizona jail and that her last class was to be the same day as the hearing. Even if true, this is hardly persuasive, given the 2½ years in which Cheyenne failed to complete such a class. Last-minute attempts by parents to comply with the rehabilitation plan do not prevent termination of parental rights. *In re Interest of Tabitha J.*, 5 Neb. App. 609, 561 N.W.2d 252 (1997). See, also, *Gomez v. Savage*, 254 Neb. 836, 580 N.W.2d 523 (1998); *In re Interest of V.M.*, 235 Neb. 724, 457 N.W.2d 288 (1990).

Cheyenne was also provided by the trial court with the opportunity for supervised visitation. Although Cheyenne claims that she was denied visits by the Department and Kassara's foster parents, the evidence indicates that Cheyenne on many occasions failed to take advantage of the opportunity to visit.

█ Cheyenne claims that her failure to demonstrate her intention and fitness to maintain her parental rights stems, in part, from her various instances of incarceration. It need hardly be said that this is far from a compelling excuse. Although incarceration alone is not a basis for termination of parental rights, we may note that Cheyenne's incarceration has contributed to her neglect of Kassara. See *In re Interest of Joshua M. et al.*, 256 Neb. 596, 591 N.W.2d 557 (1999). This is not to say that any

parent who is incarcerated will automatically have his or her parental rights terminated. These cases need to be evaluated on a case-by-case basis and will always be based on the best interests of the child. Cheyenne claims, in particular, that she violated the terms of her Arizona parole because she feared that if she did not return to Nebraska, she would lose Kassara. Furthermore, Cheyenne claims that she returned to Arizona to finish her jail term because she was motivated by her desire to keep Kassara.

It should be noted that Cheyenne's motivation and desire to be a parent are not at issue. The State is not required to show that noncompliance with a court-ordered rehabilitation plan is willful in order to prove that termination of parental rights should be ordered under § 43-292(6). *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Instead, the evidence concerns Cheyenne's ability to be a parent. In any event, Cheyenne's fear of losing Kassara might justify seeking legal permission to leave Arizona to participate in the proceedings regarding Kassara. It does not justify Cheyenne's actions in illegally leaving Arizona in knowing violation of parole. Moreover, Cheyenne admitted that she lied to the Department upon her return to Nebraska, informing Hemphill that Cheyenne had legally left Arizona when Cheyenne knew that to be untrue.

In short, the evidence presented at the termination hearing demonstrated, by clear and convincing evidence, that Cheyenne failed to comply with nearly every aspect of the court-ordered rehabilitation plan. The trial court did not err in so determining.

### Best Interests

Cheyenne claims that the trial court erred in finding that the State proved, by clear and convincing evidence, that termination of parental rights was in Kassara's best interests. This claim is without merit. Cheyenne admitted, at the adjudication phase of the proceedings, the allegations of neglect that brought Kassara within the jurisdiction of the trial court. The evidence presented at the termination hearing amply demonstrated that termination of Cheyenne's parental rights was in Kassara's best interests.

The evidence, as set forth above, that Cheyenne failed almost entirely to comply with the rehabilitation plan is

persuasive evidence that warrants the termination of her parental rights. Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *Id.*

We must also consider Kassara's treatment by Cheyenne and Kassara's condition and progress during foster care. Evidence presented at the termination hearing, and admitted without objection, shows that Kassara was, prior to detention, subjected to sexual abuse by a friend of Misty. The evidence also shows that Kassara was well behind her peers educationally because she had missed so much school. The evidence further shows that when Kassara's foster parents took her to the dentist, she had cavities in every tooth. Kassara's foster mother testified that Kassara had been prone to emotional outbursts and violent behavior when she first arrived in foster care, but that Kassara's behavior had improved. The foster mother also testified that Kassara's behavior would deteriorate for a time after visits with Cheyenne.

Kassara's counselor, who also had counseling sessions with Cheyenne, testified that in her opinion, Kassara had stabilized since being placed in foster care, but that Cheyenne had not. The therapist testified that Kassara did not trust Cheyenne and wished to remain in foster care. The therapist testified that in her opinion, Kassara's best interests would be served if Cheyenne's parental rights were terminated.

Children cannot, and should not, be suspended in foster care, or be made to await uncertain parental maturity. *Id.* The record in this case shows, by clear and convincing evidence, that termination of Cheyenne's parental rights is in Kassara's best interests.

## CONCLUSION

The State proved, by clear and convincing evidence, that Cheyenne was given a reasonable opportunity to comply with a court-ordered rehabilitation plan but almost completely failed to do so and that termination of Cheyenne's parental rights was in Kassara's best interests. This showing was sufficient to justify termination of Cheyenne's parental rights pursuant to § 43-292(6). No prejudicial error resulted from the admission of

evidence in the trial court. Consequently, the judgment of the trial court terminating Cheyenne's parental rights to Kassara was without prejudicial error and is affirmed.

AFFIRMED.