IN RE INTEREST OF JOSHUA M. ET AL.,
CHILDREN UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. LONA F., APPELLANT.
558 N.W.2d 548

Filed January 31, 1997.   Nos. S-94-1239, S-94-1240, S-95-761, S-95-762.

Julie A. Frank, of Frank & Gryva, P.C., for appellant.

Margaret A. Badura, Deputy Douglas County Attorney, and Christine P. Costantakos, guardian ad litem, for appellee.

Kimberley Taylor Riley for amicus curiae Foster Care Review Board.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

WRIGHT, J.

## I. NATURE OF CASE

These appeals arose from the Douglas County Separate Juvenile Court's decisions in four separate cases involving five children: Gloria F., born May 5, 1985; Tabitha M., born August 13, 1987; T.J. M., born February 21, 1990; Amanda M., born October 27, 1991; and Joshua M., born September 6, 1993.

Case No. S-94-1239 is an appeal from the juvenile court order directing that Joshua be removed from the care of the mother, Lona F., and that custody be placed in the Department of Social Services (DSS). Case No. S-94-1240 is an appeal from an identical order with respect to the remaining four children. Case No. S-95-761 is an appeal from the juvenile court's termination of Lona's parental rights regarding Joshua. Case No. S-95-762 is an appeal from the juvenile court's termination of Lona's parental rights regarding the remaining four children.

## II. SCOPE OF REVIEW

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of

the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and may give weight to the fact that the trial court observed the witnesses and accepted one version of the facts over another. *In re Interest of Jorius G. & Cheralee G.*, 249 Neb. 892, 546 N.W.2d 796 (1996); *In re Interest of J.T.B. and H.J.T.*, 245 Neb. 624, 514 N.W.2d 635 (1994); *In re Interest of J.A.*, 244 Neb. 919, 510 N.W.2d 68 (1994).

When a jurisdictional question does not involve a factual dispute, its determination is a matter of law, which requires an appellate court to reach a conclusion independent from the decisions made by the lower courts. *In re Interest of Noelle F. & Sarah F.*, 249 Neb. 628, 544 N.W.2d 509 (1996).

## III. FACTS

Lona was 13 years old when she gave birth to Gloria. Gloria's biological father, Walter R., was apparently 36 years old at the time. At age 15, Lona began living with Thomas M. and Barbara C. Lona, Thomas, and Barbara lived as one family unit, and Thomas fathered at least seven children between the two women. Thomas is the biological father of Tabitha, T.J., Amanda, and Joshua.

On March 26, 1993, the Douglas County Attorney filed a petition regarding Gloria, Tabitha, T.J., and Amanda, alleging that they were within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 1993) and requesting that they be placed in the temporary custody of DSS. Joshua was not yet born at this time. The juvenile court ordered that the immediate custody of the children be retained in DSS. On June 8, Thomas was charged with two counts of first degree sexual assault on a child. The charges alleged that Thomas had sexually assaulted Gloria and a second child fathered by Thomas and born to Barbara. Thomas was ultimately convicted and sentenced to consecutive sentences of 8 to 12 years' imprisonment on each count.

On August 23, 1993, Gloria, Tabitha, T.J., and Amanda were adjudicated to be within the meaning of § 43-247(3)(a). This order retained temporary custody of the children with DSS for appropriate care and placement. On October 6, the children

were ordered to remain in the temporary custody of DSS and Lona was ordered to comply with a plan designed to correct the conditions leading to their adjudication. Among other proscriptions, Lona was ordered to avoid any association with Thomas. On November 18, the juvenile court again ordered Lona to refrain from contact with Thomas.

A review of the detention order was held on April 22, 1994, and the juvenile court found that it was still not in the children's best interests to be returned to Lona's home. The court continued their temporary custody with DSS. A review hearing was again held on October 19. The court found that T.J. and Amanda should remain in the custody of DSS for appropriate care and placement, but modified the initial order such that the placement of T.J. and Amanda could "include the home of Lona." Gloria and Tabitha remained in foster care. T.J. and Amanda were eventually returned to Lona's home as provided for in the October 19 modification.

The October 19, 1994, order also reiterated the prohibition on Lona's having any contact with Thomas:

> [Lona must] [n]ot engage in any contact or communication or visitation in ANY FORM WHATSOEVER, (including but not limited to telephon[e] or letter) with Thomas . . . and Lona F[.] shall not permit, allow, or in any manner facilitate any visitation, contact or communication in ANY FORM WHATSOEVER (including but not limited to telephone or letters) between Thomas . . . and any of the above-named minor children.

(Emphasis in original.)

On December 6, 1994, the county attorney filed a motion for immediate temporary custody regarding T.J. and Amanda. The juvenile court granted the motion and held that pending a further hearing, T.J. and Amanda should immediately be removed from Lona's home. The court entered a separate order for the immediate removal of Joshua from Lona's care. That same day, the county attorney filed a motion to terminate Lona's parental rights to Gloria, Tabitha, T.J., and Amanda. The county attorney alleged that these four children had been adjudicated to be within the meaning of § 43-247(3)(a) and that the children were within the meaning of Neb. Rev. Stat. § 43-292(6) (Reissue

1993). The county attorney also alleged that Lona had knowingly and intentionally violated court orders forbidding contact with Thomas. The motion was later amended to allege that Gloria and Tabitha were also within the meaning of § 43-292(7). Also on December 6, a similar petition was filed in a separate proceeding regarding Joshua. The county attorney alleged that Joshua was within the meaning of §§ 43-247(3)(a) and 43-292(6). The petition was later amended to allege that Joshua was also within the meaning of § 43-292(2).

A detention hearing was held on December 15, 1994, at which evidence was taken regarding Lona's contact with Thomas and Walter, and the children's health and behavior. Thereafter, on December 16, the juvenile court ordered that it would be in the best interests of Gloria, Tabitha, T.J., and Amanda to place them in the temporary custody of DSS for appropriate care and placement until further order of the court, subject to supervised visitation with Lona. A similar order was entered with respect to Joshua. Lona timely appealed both of these orders.

In spite of the appeals, the juvenile court considered the petition for termination of Lona's parental rights to the five children, over Lona's objection that the court lacked jurisdiction because of the appeals. On June 28, 1995, the court adjudicated Joshua as being within the meaning of § 43-247(3)(a) and terminated Lona's parental rights to him. By a separate order that same day, the court terminated Lona's parental rights to the remaining four children. Lona timely appealed these orders.

The Nebraska Court of Appeals affirmed the juvenile court's detention orders in cases Nos. S-94-1239 and S-94-1240. *In re Interest of Joshua M. et al.*, 4 Neb. App. 659, 548 N.W.2d 348 (1996). The Court of Appeals held that the juvenile court did not have jurisdiction to consider whether Lona's parental rights to all five of the children should be terminated because the appeals from the detention orders were pending, and the Court of Appeals dismissed cases Nos. S-95-761 and S-95-762 for lack of jurisdiction and remanded the causes to the juvenile court with directions to cancel the juvenile court's orders terminating Lona's parental rights. We granted the State's petition for further review.

## IV. ASSIGNMENTS OF ERROR

In summary, Lona argued to the Court of Appeals that the juvenile court committed the following errors: (1) The court erred in finding that it had jurisdiction to terminate Lona's parental rights despite her pending appeals; (2) the court erred by finding a sufficient basis for removing T.J., Amanda, and Joshua from her home; and (3) the court made numerous errors with respect to the termination of Lona's parental rights.

In its petition for further review, the State assigns the following errors: (1) The Court of Appeals erred in its determination that the order entered by the juvenile court on December 16, 1994, regarding Gloria, Tabitha, T.J., and Amanda was a final, appealable order, and (2) the Court of Appeals erred by finding that the juvenile court did not have jurisdiction to terminate Lona's parental rights to the five children.

## V. ANALYSIS

### 1. DETENTION ORDERS

On December 6, 1994, the county attorney filed a petition alleging that Joshua was within the meaning of §§ 43-247(3)(a) and 43-292(6). The petition was later amended to also allege that Joshua was within the meaning of § 43-292(2). The juvenile court issued a temporary custody order regarding Joshua, and he was removed from Lona's home and placed in the care of DSS. On December 15, a hearing was held regarding Joshua's detention and also addressing the detention of the other four children. The detention hearing focused on Lona's relationships and contact with Thomas and Walter, as well as the health and general behavior of the children while in Lona's care.

Previously, in orders issued by the juvenile court on October 6 and November 18, 1993, and April 22 and October 19, 1994, the court repeatedly ordered Lona not to have any contact with Thomas. For example, the October 19, 1994, order directed that Lona was

[n]ot [to] engage in any contact or communication or visitation in ANY FORM WHATSOEVER, (including but not limited to telephon[e] or letter) with Thomas . . . and Lona F[.] shall not permit, allow, or in any manner facili-

tate any visitation, contact or communication in ANY FORM WHATSOEVER (including but not limited to telephone or letters) between Thomas . . . and any of the above-named minor children.

Nevertheless, at the December 15 hearing, Lona admitted to numerous violations of these orders. Lona admitted receiving a number of letters from Thomas and sending a number as well. Lona admitted reading letters from Thomas to T.J. She admitted attempting to obtain a fake identification card in order to visit Thomas in prison and using aliases to avoid detection. At one point, Lona apparently attempted to obtain security clearance for all the children to visit Thomas in prison. Lona also admitted talking to Thomas on the telephone.

Lona indicated at the December 15, 1994, hearing that she permitted Thomas to maintain contact with the children, in violation of the juvenile court's order, because she did not believe she needed to protect the children from communicating with Thomas. She claimed this despite the fact that she knew of Thomas' conviction for sexually assaulting Gloria and despite the fact that Lona admitted she thought Thomas might have "done something" to Tabitha as well.

The evidence at the December 15, 1994, hearing also focused on Lona's homelife. Lisa Mathouser, who supervised some of Lona's visitations with Gloria and Tabitha, testified Lona and the children had told her that on some visits, Walter, Gloria's biological father, was present. According to Lona, Walter and Lona began having sexual relations when Lona was about 12 years old. Walter was 35 at the time. Mary Harris, a DSS protective services caseworker, testified that in view of Walter's history of sexual relations with Lona when she was 12 years of age, Harris was concerned because Walter was in the house with Gloria, who was approaching the age of 12. In addition, Harris testified that at the time the children were removed from Lona's home, Joshua had a severe case of diaper rash and Amanda and Joshua had diarrhea.

We must address whether Joshua should remain in the custody of DSS pending final adjudication. In order to demonstrate that a preadjudication detention should continue, the State must prove by a preponderance of the evidence that the custody of a

juvenile should remain in DSS pending adjudication. See *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). As both the juvenile court and the Court of Appeals held, the above evidence is sufficient to demonstrate that allowing Joshua to remain in Lona's home would be contrary to his welfare.

Lona argues that because the juvenile court orders that she violated were not entered in Joshua's case, but were instead entered in the other children's case, evidence of violation of those court orders cannot be considered as a basis for continuation of Joshua's detention. However, as the Court of Appeals held, the issue is not whether Lona violated a court order in Joshua's case. The issue is whether allowing Joshua to remain in her home would be contrary to his welfare. See *In re Interest of R.G., supra*. The above evidence of repeated and unrelenting violations of court orders forbidding Lona from maintaining contact with a person convicted of two counts of sexual assault—including a sexual assault on one of Lona's own children—is certainly sufficient to establish by a preponderance of the evidence that keeping Joshua in Lona's care would be contrary to his welfare. Cf. *In re Interest of B.B. et al.*, 239 Neb. 952, 479 N.W.2d 787 (1992) (failure to protect children from two men whom mother had previously accused of sexually abusing her children was sufficient to justify termination of her parental rights). It was reasonable for the juvenile court to assume that Joshua would be harmed unless he was removed from Lona's care.

Lona also argues that the above evidence is insufficient to support the juvenile court's detention order with respect to Joshua because there is no specific evidence of harm or risk of harm to Joshua. However, as the Court of Appeals in *In re Interest of Joshua M. et al.*, 4 Neb. App. 659, 678, 548 N.W.2d 348, 360 (1996), noted, there is no requirement that a juvenile court " 'wait until disaster has befallen a minor child before the court may acquire jurisdiction. If it is reasonable to assume that injury will occur absent action by the court, then the court may assume jurisdiction and act accordingly.' " Accord *In re Interest of W.C.O.*, 220 Neb. 417, 370 N.W.2d 151 (1985). See, also, *In re Interest of M.B. and A.B.*, 239 Neb. 1028, 480 N.W.2d 160 (1992) (holding that State was not required to show daughters

had actually been sexually abused where father had been convicted of sex crimes against other children and mother continued to leave daughters in his care).

Finally, Lona points out that the last paragraph of Neb. Rev. Stat. § 43-254 (Reissue 1993) requires the State to show that reasonable efforts have been made to prevent the need for the children's removal. Lona argues that the State failed to show that such efforts were made.

The pertinent portion of § 43-254 provides:

> If a juvenile has been removed from his or her parent, guardian, or custodian pursuant to subdivision (3) of section 43-248, the court may enter an order continuing detention or placement only upon a written determination that continuation of the juvenile in his or her home would be contrary to the welfare of such juvenile and that reasonable efforts were made, prior to placement, to prevent or eliminate the need for removal and to make it possible for the juvenile to return to his or her home.

As the Court of Appeals correctly held, the provision in § 43-254 that Lona refers to by its own terms only applies when a juvenile is taken into temporary custody without a court order under the authority of Neb. Rev. Stat. § 43-248(3) (Reissue 1993). Joshua was taken into custody pursuant to the juvenile court's December 6, 1994, order. Therefore, this alleged error is without merit.

As a result, the juvenile court's detention order in case No. S-94-1239 should be affirmed. Lona's appeal of the detention order with respect to the remaining four children in case No. S-94-1240 raises the identical issues addressed above. In view of our analysis regarding these issues, the juvenile court's detention order in case No. S-94-1240 should also be affirmed with respect to T.J. and Amanda. However, for the reasons discussed below, the Court of Appeals did not have jurisdiction to consider Lona's appeal of the detention order in case No. S-94-1240 with respect to Gloria and Tabitha, and therefore, that portion of the appeal must be dismissed.

## 2. JURISDICTION TO TERMINATE LONA'S
## PARENTAL RIGHTS TO JOSHUA

We must address whether the Court of Appeals erred by finding that the juvenile court did not have jurisdiction to terminate Lona's parental rights with respect to Joshua. Joshua was removed from Lona's home pursuant to a court order issued on December 6, 1994, and was placed in the temporary custody of DSS. On that same day, the county attorney filed a petition alleging that Joshua was a child within the meaning of §§ 43-247(3)(a) and 43-292(6). A detention hearing was held on December 15, and the juvenile court found that temporary custody of Joshua should continue in DSS for appropriate care and placement.

As the Court of Appeals correctly held, the December 16, 1994, order regarding Joshua was clearly appealable. We held in *In re Interest of R.R.*, 239 Neb. 250, 475 N.W.2d 518 (1991), that a detention order issued under §§ 43-247(3)(a) and 43-254 after a hearing which continues to withhold the custody of a juvenile from the parent pending an adjudication hearing to determine whether the juvenile is neglected is a final order and thus appealable. Once an appeal has been perfected to an appellate court, the trial court is without jurisdiction to hear a case involving the same matter between the same parties. *WBE Co. v. Papio-Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995). Thus, the Court of Appeals correctly held that the juvenile court did not have jurisdiction to terminate Lona's parental rights until resolution of her appeal from the original detention order regarding Joshua, and the Court of Appeals correctly vacated the juvenile court order in case No. S-95-761 terminating Lona's parental rights to Joshua.

### 3. JURISDICTION TO TERMINATE LONA'S PARENTAL RIGHTS
### TO GLORIA, TABITHA, T.J., AND AMANDA

On March 23, 1993, Gloria, Tabitha, T.J., and Amanda were removed from Lona's home for the first time. Their custody was placed in DSS and has remained in DSS at all relevant times. However, prior to the December 16, 1994, order regarding these children, T.J. and Amanda were returned by DSS to Lona's home. T.J. and Amanda stayed with Lona until December 6,

1994, when the juvenile court ordered that they be removed from Lona's home.

On December 16, 1994, the juvenile court entered a preadjudication order retaining temporary custody of Gloria, Tabitha, T.J., and Amanda in DSS for appropriate care and placement. Lona appealed this order, which appeal was docketed as case No. S-94-1240. Lona argues that her appeal from the preadjudication detention order divested the juvenile court of jurisdiction and that, therefore, the court did not have jurisdiction to address whether Lona's parental rights regarding these four children should be terminated while her appeals were pending.

The State argues that the December 16, 1994, order was merely a change in placement pursuant to Neb. Rev. Stat. § 43-285(3) (Reissue 1993) and that, therefore, the only proper avenue for Lona's appeal was through a juvenile review panel, pursuant to Neb. Rev. Stat. § 43-287.04 (Reissue 1993). The State argues that because Lona did not utilize this avenue for appeal, she has waived her right to appeal the December 16, 1994, order. As a result, Lona's attempt to appeal this order without utilizing the juvenile review panel was improper and should not have divested the juvenile court of the jurisdiction necessary to adjudicate the termination of Lona's parental rights.

The Court of Appeals held that the December 16, 1994, order was "dispositional" in nature because the order changed the terms of the juvenile court's original disposition regarding Gloria, Tabitha, T.J., and Amanda in such a way as to eliminate the possibility that the children could be placed with Lona by DSS and was a final, appealable order. *In re Interest of Joshua M. et al.*, 4 Neb. App. 659, 667, 548 N.W.2d 348, 354 (1996).

As we will explain, this holding was correct with respect with T.J. and Amanda, but was incorrect with respect to Gloria and Tabitha.

### (a) T.J. and Amanda

A judicial determination made following adjudication in a special proceeding which affects the substantial right of parents to raise their children is a final, appealable order. See *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). See,

also, *In re Interest of R.A. and V.A.*, 225 Neb. 157, 403 N.W.2d 357 (1987), *overruled on other grounds, State v. Jacob*, 242 Neb. 176, 494 N.W.2d 109 (1993). We noted in *In re Interest of R.G.* that the definition of a "special proceeding" for purposes of litigation under the Nebraska Juvenile Code includes any " 'statutory remedy which is not in itself an action.' " 238 Neb. at 413, 470 N.W.2d at 787. This definition includes the juvenile court's December 16, 1994, order. Prior to December 16, Gloria, Tabitha, T.J., and Amanda were all within the jurisdiction of the juvenile court. The December 16 order was the court's modification of its prior dispositional orders, and this modification was made pursuant to the authority provided by Neb. Rev. Stat. § 43-284 (Reissue 1993). The December 16 order removed T.J. and Amanda from Lona's home, thereby effectively eliminating her right to raise these children. Thus, the Court of Appeals was correct to determine that the December 16 order was a final, appealable order.

The State claims that even if the December 16, 1994, order was a final order, the juvenile court nevertheless retained concurrent jurisdiction to adjudicate whether Lona's parental rights should be terminated. As the Court of Appeals correctly noted, however, this argument offends a basic principle of jurisdiction: Once an appeal has been perfected to an appellate court, the trial court is divested of its jurisdiction to hear a case involving the same matter between the same parties. *WBE Co. v. Papio-Missouri River Nat. Resources Dist.*, 247 Neb. 522, 529 N.W.2d 21 (1995).

Finally, the State argues that even if the December 16, 1994, order was a final order, consideration of whether Lona's parental rights should be terminated was independent of the issues involved in the December 16 order and that, therefore, the juvenile court retained jurisdiction to address this issue. However, as the Court of Appeals held, under Nebraska law, a dispositional order removing children from the care of parents and a subsequent proceeding adjudicating the termination of that parent's parental rights are both governed under the juvenile code and involve the same basic subject matter. In fact, the dispositional status of a juvenile is itself potentially a basis for

termination. See § 43-292(6) and (7). Clearly, such matters are not independent.

Once an appeal from the dispositional order was perfected, the juvenile court lost jurisdiction to address the issue of terminating Lona's parental rights while that appeal was pending. Therefore, the Court of Appeals' holding that the December 16, 1994, order was a final, appealable order was correct with respect to T.J. and Amanda.

### (b) Gloria and Tabitha

The Court of Appeals' holding that the December 16, 1994, order regarding Tabitha and Gloria was dispositional, however, was incorrect. Tabitha and Gloria had originally been adjudicated to be within § 43-247(3)(a) in an order on August 23, 1993, and they were placed in the custody of DSS for appropriate placement. Lona did not appeal the August 23, 1993, order. In *Federal Land Bank v. McElhose*, 222 Neb. 448, 384 N.W.2d 295 (1986), we held that where an order from a court is already in place and a subsequent order merely extends the time for which the previous order is applicable, the subsequent order does not extend the time in which the original order may be appealed.

The disposition of Gloria and Tabitha was not changed by the December 16, 1994, order. That order merely extended the orders already in place. The juvenile court had never previously modified its original order as to Gloria and Tabitha in such a way as to permit them to be placed with Lona. Thus, the December 16 order was merely a continuation of the court's original determination that the custody of Gloria and Tabitha should be in DSS, with no provision that placement could be with Lona. As such, the December 16 order was not a final order and was not appealable.

Because Lona could not appeal the December 16, 1994, order with respect to Gloria and Tabitha, Lona's appeal in case No. S-94-1240 must be dismissed with respect to Gloria and Tabitha. Because there was no appeal properly pending with respect to Gloria and Tabitha, the juvenile court had jurisdiction to consider the termination of Lona's parental rights regarding these two children.

### 4. TERMINATION OF PARENTAL RIGHTS TO
### GLORIA AND TABITHA

Lona assigns several errors regarding the juvenile court's termination of her parental rights, to wit: (1) The court erred when terminating Lona's parental rights because the rehabilitation plan in place was not a valid plan, as it had not been approved and therefore could not form the basis for termination of parental rights pursuant to § 43-292(6); (2) the court erred when terminating Lona's parental rights based on her noncompliance with the court's plan when her noncompliance was involuntary; (3) the court violated Lona's right to procedural due process when the court allowed the county attorney to amend the petition for termination of Lona's parental rights to conform to the evidence after the parties had rested; (4) the court erred in terminating Lona's parental rights because there was insufficient evidence to do so under § 43-292(7); (5) the court erred in terminating Lona's parental rights because there was insufficient evidence to show that termination was in the best interests of Gloria and Tabitha; and (6) the court erred by admitting evidence of referrals regarding Lona and her children to DSS prior to the initiation of the termination proceedings.

Because we have held that the juvenile court did not have jurisdiction to terminate Lona's parental rights with respect to T.J., Amanda, and Joshua, we need not address the assigned errors with respect to them. However, because we have held that the court did have jurisdiction to consider the petition to terminate Lona's parental rights to Gloria and Tabitha, we must address Lona's alleged errors with respect to these two children.

### (a) Validity of Rehabilitation Plan

Lona argues that the rehabilitation plan in place prior to the termination proceedings was not a valid plan. Lona insists that the plan was invalid because it did not comply with our instruction in *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 273, 417 N.W.2d 147, 161 (1987), that "[t]he juvenile court's specific findings of facts supporting the provisions contained in the parental rehabilitative plan shall be stated in the record."

The rehabilitation plan Lona challenges was adopted by the juvenile court in a hearing on October 5, 1993, directly follow-

ing the court's adjudication of the children as within § 43-247(3)(a). As we have articulated above, such dispositional orders are final and appealable. Lona agreed to the plan at the hearing and did not appeal from the October 5 dispositional order. Lona cannot now collaterally attack the rehabilitation plan adopted in that order. Collateral attacks on previous proceedings are impermissible unless the attack is grounded upon the court's lack of jurisdiction over the parties or subject matter. *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993); *In re Interest of C.W. et al.*, 239 Neb. 817, 479 N.W.2d 105 (1992).

### (b) Compliance With Rehabilitation Plan

Lona argues that the juvenile court erred by terminating her parental rights to Gloria and Tabitha pursuant to § 43-292(6), because the county attorney failed to establish by clear and convincing evidence that Lona's failure to comply with the court-ordered rehabilitation plan was willful. Lona insists that Thomas coerced her into not complying with the rehabilitation plan.

Section 43-292 gives the juvenile court power to terminate parental rights under the following conditions:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination . . . .

Lona points out that in *In re Interest of J.S., A.C., and C.S.*, 227 Neb. at 267, 417 N.W.2d at 158, we held that under § 43-292(6), the State must prove by clear and convincing evidence that "(1) the parent has willfully failed to comply, in whole or in part, with a reasonable provision material to the rehabilitative objective of the plan and (2) in addition to the parent's noncompliance with the rehabilitative plan, termination of parental rights is in the best interests of the child."

However, our case law is unclear as to whether noncompliance with a rehabilitation plan must be "willful." We have at times repeated the formula from *In re Interest of J.S., A.C., and C.S.* stated above, including the willfulness element. See *In re Interest of L.H. et al.*, 241 Neb. 232, 487 N.W.2d 279 (1992). At other times, however, we have stated that in order to terminate a person's parental rights, "[t]here is no requirement that the parent's failure to comply with the plan for rehabilitation be willful." *In re Interest of A.B. et al.*, 236 Neb. 220, 223, 460 N.W.2d 114, 116 (1990). As we reasoned in *In re Interest of V.M.*, 235 Neb. 724, 727, 457 N.W.2d 288, 291 (1990), "when a parent is unable or unwilling to rehabilitate herself within a reasonable period of time, the best interests of the child require termination of parental rights."

Thus, it is necessary that we clarify the law as to whether the State must prove that a parent's failure to comply with a court-ordered rehabilitation plan is willful in an action to terminate parental rights under § 43-292(6).

Again, § 43-292 states:

> The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts, under the direction of the court, have failed to correct the conditions leading to the determination . . . .

In construing a statute, a court must look to the statute's purpose and give to the statute a reasonable construction which best achieves that purpose, rather than a construction which would defeat it. *In re Interest of Jaycox*, 250 Neb. 697, 551 N.W.2d 9 (1996); *Goolsby v. Anderson*, 250 Neb. 306, 549 N.W.2d 153 (1996).

By its own terms, the purpose of § 43-292(6) is to advance the best interests of the child by giving the juvenile court power to terminate parental rights where the grounds for adjudicating the child within § 43-247(3)(a) have not been corrected.

Whether a parent is willful or not in his or her noncompliance with a rehabilitation plan is not directly relevant to this purpose. In some situations, the conditions that led to the § 43-247(3)(a) adjudication may not be corrected *in spite of* the intentions of the parent whose child has been adjudicated under this section. Indeed, § 43-247(3)(a) gives juvenile courts jurisdiction over a child who is "without proper support *through no fault* of his or her parent, guardian, or custodian." (Emphasis supplied.)

The purpose of § 43-292(6) is to protect the child from such conditions, whether they are caused willfully or not. Requiring the State to show that the failure to correct the conditions leading to the adjudication under § 43-247(3)(a) was willful would clearly defeat this purpose in those situations where the conditions persist in spite of the desire or the will of the parent to correct them. Thus, we hold that the State is not required to show that noncompliance with a court-ordered rehabilitation plan is willful in order to prove that termination of parental rights should be ordered under § 43-292(6).

Lona also argues that even if the State was not required to prove that she willfully failed to comply with the rehabilitation plan, the provisions of the plan which the State alleged that Lona violated were not material to the rehabilitation objectives of the plan. Lona points out that in *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 267, 417 N.W.2d 147, 158 (1987), we held that under § 43-292(6), the State must prove by clear and convincing evidence that "(1) the parent has willfully failed to comply, in whole or in part, with a reasonable provision *material to* the rehabilitative objective of the plan . . . ." (Emphasis supplied.)

Lona insists that she has not violated a material provision of the plan and cannot have her parental rights terminated under § 43-292(6). Lona draws our attention to the definition of "materiality" in *In re Interest of L.H. et al.*, 241 Neb. 232, 245, 487 N.W.2d 279, 289 (1992):

> "Materiality of a provision in a court-ordered rehabilitative plan is determined by a cause-and-effect relationship: Does a provision in the plan tend to correct, eliminate, or ameliorate the situation or condition on which the adjudication has been obtained under the Nebraska

Juvenile Code?" [Citation omitted.] Materiality regarding a rehabilitative plan exists when a parent's noncompliance results in a continued condition which was the basis for the adjudication and which is deleterious to a child expected to benefit from parental compliance with the rehabilitative plan.

Lona emphasizes that at the time the county attorney originally filed the petition for adjudication under § 43-247(3)(a), the portions regarding her failure to protect the children from Thomas were struck from the petition. After this deletion, she insists, the only remaining basis for the § 43-247(3)(a) adjudication with respect to her was the fact that she had failed to maintain a healthy home environment for the children. Lona argues that, therefore, the restrictions on her contact with Thomas were not material provisions of the rehabilitation plan, because they did not tend to correct or ameliorate conditions which were the basis for the original § 43-247(3)(a) adjudication.

However, Lona misunderstands the scope and purpose of a rehabilitation plan which is adopted by a juvenile court following an adjudication that a child is within § 43-247(3)(a). While it is true that one purpose of a rehabilitation plan is to ameliorate the particular conditions that serve as the basis for an allegation supporting the adjudication that a child is within the meaning of § 43-247(3)(a), a rehabilitation plan also has the larger goal of reuniting the child with the parent. Thus, we have explained that

[w]hile there is no requirement that the juvenile court must institute a plan for rehabilitation of a parent, where the failure of a parent to comply with a rehabilitation plan is an independent ground for termination of parental rights, the rehabilitation plan must be conducted under the direction of the juvenile court *and must be reasonably related to the plan's objective of reuniting parent with child.*

(Emphasis supplied.) *In re Interest of C.D.C.*, 235 Neb. 496, 500, 455 N.W.2d 801, 805 (1990). To advance this goal, the juvenile court has broad discretion to prescribe a reasonable plan to rehabilitate a parent whose child has been adjudicated to be within the meaning of § 43-247(3)(a).

It is clear from the petition and the adjudication order that Gloria and Tabitha were adjudicated to be within the meaning of § 43-247(3)(a) on the basis of a wide variety of threats to their well-being, not limited to the allegations specifically directed toward Lona. A major emphasis of the allegations in the petition supporting the finding that Gloria and Tabitha were within the meaning of § 43-247(3)(a) was the fact that Gloria had accused Thomas of sexually assaulting her and had stated that Thomas sexually assaulted her sisters. It was certainly not an abuse of discretion for the juvenile court in constructing a rehabilitation plan which has the goal of reuniting Gloria and Tabitha with Lona to forbid her from maintaining an association with a person convicted of sexually assaulting one of her children.

### (c) Amendment of Pleadings

The petition regarding the termination of Lona's parental rights stated several grounds for termination of those rights, including an allegation pursuant to § 43-292(6) that Lona had failed to correct the conditions that led to the previous § 43-247(3)(a) adjudication. After each party to the termination hearing had rested, the State requested leave to amend the pleadings to conform to the evidence by adding an additional count to the petition, count V, alleging that Gloria and Tabitha were within the meaning of § 43-292(7). The juvenile court granted leave, and the following text was written into the pleadings:

> [T]hat Gloria F[.] and Tabitha M[.] have been in an out-of-home placement for 18 or more consecutive months and the mother has failed to correct the conditions leading to the juvenile's [sic] out-of[-]home placement in spite of reasonable efforts and services to the parents ordered by the court or offered by the Dept. of Soc. Services or other designated agency.

In its order terminating Lona's parental rights, the juvenile court found, among other things, that the allegations in count V were true and that Gloria and Tabitha were within the meaning of § 43-292(7). Lona argues that the court prejudiced Lona by permitting the State to amend the pleading to add the

§ 43-292(7) claim after the parties had rested, because in so doing, Lona was not given notice that whether her children were within the meaning of § 43-292(7) would be an issue at the termination hearing.

A trial court may conform the pleadings to the facts proved when an amendment does not change substantially the claim or defense. The decision to allow such an amendment rests with the discretion of the trial court and will not be error unless prejudice resulted. *McCook Nat. Bank v. Myers*, 243 Neb. 853, 503 N.W.2d 200 (1993). Prejudicial error results when a pleading is allowed to be amended where the amendment changes the issues and affects the quantum of proof as to any material fact. *Id.*

The juvenile court's granting leave to the State to amend the pleadings to conform to the evidence did not substantially change the subject matter or issues that would be addressed at the termination hearing. The general issue at the hearing was whether there was sufficient grounds to terminate Lona's parental rights. To this end, the State pled a variety of theories and presented evidence to support these claims. Lona participated in the hearing and had ample opportunity to address and rebut all the evidence presented. The issues and evidence relating to whether the children were within the meaning of § 43-292(6) were virtually identical to the issues and evidence relating to the allegation included in the amendment. We see no prejudice in permitting the State to add a claim to the pleadings which would conform to the evidence the parties presented and had ample opportunity to address.

(d) Sufficiency of Evidence Under § 43-292(7)

Lona argues that the juvenile court erred by finding that Lona's parental rights should be terminated pursuant to § 43-292(7). Section 43-292 states as follows:

The court may terminate all parental rights between the parents or the mother of a juvenile born out of wedlock and such juvenile when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:

. . . .

(7) The juvenile has been in an out-of-home placement for eighteen or more consecutive months and the parents have failed to correct the conditions leading to the juvenile's out-of-home placement in spite of reasonable efforts and services to the parents ordered by the court or offered by the Department of Social Services or other designated agency.

Lona argues that the State did not present sufficient evidence to establish that Lona had failed to correct the conditions leading to the juveniles' out-of-home placement. Lona claims that the conditions leading to the out-of-home placement were limited to the allegations in the § 43-247(3)(a) petition specifically addressed to her—that she had failed to maintain a healthy home environment.

As discussed with respect to the earlier assignment of error regarding Lona's failure to substantially comply with her rehabilitation plan, the conditions leading to the detention of Gloria and Tabitha were also related to the relationship between Lona and Thomas. The juvenile court included as a condition of her rehabilitation plan that Lona was required to not have any contact with Thomas. The evidence presented at the hearing clearly established that Lona failed to accomplish this aspect of her rehabilitation. Such a failure precludes the return of Gloria and Tabitha from out-of-home placement, and therefore, § 43-292(7) applies.

(e) Best Interests of Children

Lona next argues that the State has failed to offer any evidence as to why it was in the best interests of Gloria and Tabitha to have Lona's parental rights terminated. Lona again requests this court to ignore the substantial amount of evidence regarding Lona's repeated violation of the juvenile court orders directing that Lona not communicate with Thomas. Lona suggests the only evidence that is relevant to an assessment of the children's best interests is that evidence directly related to the allegations in the § 43-247(3)(a) petition which originally led to the adjudication.

An order terminating parental rights must be based on clear and convincing evidence. *In re Interest of C.P.*, 235 Neb. 276,

455 N.W.2d 138 (1990). Clear and convincing evidence means and is that amount of evidence which produces in the trier of fact a firm belief or conviction about the existence of a fact to be proved. *Id.*

We have held that where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990). Children cannot, and should not, be suspended in foster care, nor be made to await uncertain parental maturity. *Id.*

In *In re Interest of B.B. et al.*, 239 Neb. 952, 479 N.W.2d 787 (1992), the court addressed a situation similar to the present case. In that case, the juvenile court terminated the parental rights of a mother regarding her four children. The evidence in that case included the fact that the mother maintained ongoing relationships with two men whom she had previously accused of physically and sexually abusing her children. The court had included in the mother's rehabilitation plan an instruction that the mother was to disassociate with one of the men. Nevertheless, the mother persisted in maintaining a relationship with both of these men and expressed a desire for the children to maintain contact with both of them. A psychologist who had treated the mother testified that the mother lacked insight as to the seriousness of the children's suffering and that she lacked motivation to protect them from further abuse. On appeal, we affirmed the court's termination of the mother's parental rights, because she failed to reasonably comply with the rehabilitation plan and did not correct the conditions that led to the initial adjudication of the children.

The present case is similar to *In re Interest of B.B. et al.* The State clearly established that despite repeated court orders to avoid contact with Thomas, Lona persistently rebuffed the juvenile court's rehabilitation plan and maintained contact with Thomas. Thomas, again, was the man who was convicted of first degree sexual assault on Gloria and who Lona admits she believes sexually molested Tabitha.

On one occasion, Lona actually attempted to obtain security clearance for the children, including Gloria and Tabitha, to visit Thomas in prison. Lona persisted in defying the court order,

despite admitting she knew that "if I want my kids, I have to obey [the order]." In addition, a counselor who engaged in therapy with Lona for more than 1 year testified that it did not appear Lona had made any progress in her sexual abuse therapy. A second therapist stated that "Lona is unable to see the impact that [sexual abuse] has on the children," that she would not be able to protect her children from sexual abuse, and that even now "sexual molestation is not seen by Lona as abusive."

One of the psychologists who treated Lona during her rehabilitation period expressed concern that Lona might again be living with Walter, the man who impregnated Lona when he was 36 and she was 13. The psychologist stated that she was concerned for the safety of Lona's daughters because Walter was having significant contact with the children. Lona testified, for example, that Walter had a practice of arriving at her home each night in time to check on the family at bedtime. The psychologist stated that she was concerned because Lona's daughters were approaching the age that Lona was when Walter had sexual contact with her. Lona's renewed relationship with Walter confirms the psychologist's concern that Lona does not understand the destructiveness of sexual abuse. In view of Lona's inappropriate perspective on sexual abuse and her history with Walter, the psychologist's concerns for the safety of the children are certainly warranted.

A parent's unwillingness to comply with a rehabilitation program directed at reuniting the parent with his or her child and designed to secure the continued long-term health and well-being of the child compels the conclusion that termination of that parent's rights is in the best interests of the child. See, *In re Interest of L.H. et al.*, 241 Neb. 232, 487 N.W.2d 279 (1992); *In re Interest of C.D.C.*, 235 Neb. 496, 455 N.W.2d 801 (1990).

There was clear and convincing evidence to terminate Lona's parental rights to Gloria and Tabitha.

#### (f) Preadjudication Referrals

Lona contends that the juvenile court improperly admitted evidence of referrals to DSS regarding Lona and her children. The referrals occurred prior to the adjudication that the children were within the meaning of § 43-247(3)(a) and the adoption of

the rehabilitation plan. Lona argues that such evidence was irrelevant to the determination of whether Lona had complied with the rehabilitation plan or whether termination of her parental rights would be in the best interests of the children and that such evidence should not have been admitted. We agree.

Referrals to DSS which occurred prior to the adjudication are not relevant to a determination of whether Lona complied with the rehabilitation plan after adjudication. However, the improper admission of evidence by the trial court does not, by itself, constitute reversible error. See *In re Interest of J.H.*, 242 Neb. 906, 497 N.W.2d 346 (1993). As long as an appellant properly objected at trial, an appellate court will not consider any such evidence in its de novo review of the record. *Id.* This evidence was not considered in our de novo review of the record.

## VI. CONCLUSION

The decisions of the Court of Appeals are affirmed with respect to cases Nos. S-94-1239 and S-95-761. The decision of the Court of Appeals in case No. S-94-1240 with respect to T.J. and Amanda is also affirmed. The decision of the Court of Appeals in case No. S-94-1240 with respect to Gloria and Tabitha is vacated, and the appeal is dismissed with regard to Gloria and Tabitha. The decision of the Court of Appeals in case No. S-95-762 with respect to T.J. and Amanda is also affirmed. The decision of the Court of Appeals in case No. S-95-762 with respect to Gloria and Tabitha is reversed, and the cause is remanded with directions that the Court of Appeals affirm the holding of the juvenile court.

JUDGMENTS IN NOS. S-94-1239 AND S-95-761 AFFIRMED.
JUDGMENT IN NO. S-94-1240 AFFIRMED IN PART AND IN PART VACATED, AND APPEAL DISMISSED IN PART.
JUDGMENT IN NO. S-95-762 AFFIRMED IN PART AND IN PART REVERSED, AND CAUSE REMANDED WITH DIRECTIONS.