IN RE INTEREST OF GLORIA F., A CHILD UNDER 18 YEARS OF AGE. STATE OF NEBRASKA, APPELLEE, V. WALTER R., APPELLANT.

577 N.W.2d 296

Filed April 23, 1998.   No. S-97-729.

Jeffrey A. Wagner, of Legal Aid Society, Inc., for appellant.

Karen S. Kassebaum, Deputy Douglas County Attorney, and Christine P. Costantakos, guardian ad litem, for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WHITE, C.J.

Walter R., the father of Gloria F., a female child 12 years of age, appeals from an order of the separate juvenile court of Douglas County, contesting an order of detention and placement with the Nebraska Department of Health and Human Services. The assigned errors can be combined as follows: The juvenile court erred in the admission of certain evidence, the detention order was not supported by sufficient evidence, and

the detention order violated various sections of the Constitutions of the State of Nebraska and the United States.

The parental rights of the natural mother had been previously terminated. See *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). Gloria has been in foster care since March 1993. The petition to terminate appellant's parental rights was filed on July 11, 1997, and the detention order appealed from was issued June 30.

At the detention hearing, evidence was introduced of the paternity decree finding appellant to be the father of Gloria and finding that Gloria was conceived when her mother was 12 years of age. Further evidence established that appellant had never requested visitation with Gloria or offered or paid any support and that Gloria expressed revulsion concerning appellant directed at his sexual congress with her mother when the mother was of a young age.

The caseworker expressed the opinion that placement with appellant, a virtual stranger, was not in the best interests of Gloria and that appellant's past abuse of Gloria's mother exposed Gloria to an unacceptable risk.

Appellant contends the separate juvenile court erred in (1) granting the continued detention order, because the State failed to demonstrate reasonable efforts had been made to return Gloria to the parental home; (2) allowing the caseworker to testify regarding statements in her case file via the business record exception; and (3) granting the continued detention order, because the hearing deprived appellant of his due process rights.

Juvenile cases are reviewed de novo on the record, and the appellate court is required to reach a conclusion independent of the trial court's findings; however, where the evidence is in conflict, the appellate court will consider and give weight to the fact the lower court observed the witnesses and accepted one version of the facts over another. *In re Interest of Joshua M. et al., supra.* To the extent issues of law are presented, an appellate court has an obligation to reach independent conclusions irrespective of the determinations made by the lower court. *Farr v. Designer Phosphate & Premix Internat.*, 253 Neb. 201, 570 N.W.2d 320 (1997).

Appellant claims there was insufficient evidence to warrant the juvenile court's order granting continued detention. He bases this claim on the assertion that continued detention orders should be granted only where both Neb. Rev. Stat. § 43-254 (Cum. Supp. 1996) and Neb. Rev. Stat. § 43-1315 (Reissue 1993) are satisfied. Section 43-254 provides as follows:

Pending the adjudication of any case, if it appears that the need for placement or further detention exists, the juvenile may be (1) placed or detained a reasonable period of time on order of the court in the temporary custody of either the person having charge of the juvenile or some other suitable person . . . .

If a juvenile has been removed from his or her parent, guardian, or custodian pursuant to subdivision (3) of section 43-248, the court may enter an order continuing detention or placement only upon a written determination that continuation of the juvenile in his or her home would be contrary to the welfare of such juvenile and that reasonable efforts were made, prior to placement, to prevent or eliminate the need for removal and to make it possible for the juvenile to return to his or her home.

Section 43-1315 provides:

In reviewing the foster care status of a child and in determining its order for disposition, the court shall continue disposition outside the home only upon a written determination that return of the child to his or her home would be contrary to the welfare of such child and that reasonable efforts have been made to make it possible for the child to return to his or her home. In making this determination, the court shall consider the following criteria, including, but not limited to:

(1) The goals of the foster care placement and the appropriateness of the foster care plan established pursuant to section 43-1312;

(2) The services which have been offered to reunite the family; and

(3) When the return of the child to his or her home is not likely, the reasonable efforts which have been made or should be made to provide for other methods of care.

Appellant does not dispute that § 43-254 governs the determination of whether detention orders should be granted. However, appellant argues § 43-254 must be satisfied together with § 43-1315 because (1) detention orders are "dispositional" and (2) § 43-1315 addresses the evidentiary standard required to sustain dispositional orders. Appellant argues the State did not comply with § 43-1315, because the State failed to offer evidence that reasonable efforts had been made to return Gloria to her home or that placing Gloria in appellant's home would be contrary to her welfare. Citing the Nebraska Court of Appeals' holding in *In re Interest of Joshua M. et al.*, 4 Neb. App. 659, 548 N.W.2d 348 (1996), the State contends appellant's argument lacks merit because preadjudication detention orders, such as the order in question, are not dispositional in nature.

Generally, a dispositional proceeding is a judicial determination concerning a juvenile's relationship to her or his parents following an adjudication under Neb. Rev. Stat. § 43-247 (Cum. Supp. 1996). *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). The State agrees that dispositional orders concern the parental relationship following adjudication, yet, citing *In re Interest of Joshua M. et al., supra*, the State argues that unlike postadjudication detention orders, preadjudication detention orders are not dispositional.

However, *In re Interest of Joshua M. et al., supra*, does not stand for the proposition the State suggests. Rather, in *In re Interest of Joshua M. et al.*, the Court of Appeals distinguished preadjudication and postadjudication detention orders only to determine whether postadjudication detention orders are final and appealable. Moreover, in *In re Interest of R.G.*, 238 Neb. at 424, 470 N.W.2d at 793, we stated:

> [A] proceeding concerning the temporary placement of a juvenile pending adjudication is likewise dispositional in that, by its nature, the ruling involves a nonpermanent placement of a juvenile pending further judicial action. Thus, a hearing to determine who shall have custody of a juvenile pending an adjudication is in that sense dispositional . . . .

In light of our holding in *In re Interest of R.G., supra*, and the State's erroneous interpretation of *In re Interest of Joshua M. et*

*al., supra*, we reject the State's contention and agree with appellant insofar as that preadjudication and postadjudication detention orders are dispositional in nature.

Even though preadjudication and postadjudication detention orders are dispositional in nature, we must still determine whether § 43-1315 applies to all dispositional orders. This issue presents a question of statutory interpretation. Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent conclusion irrespective of the decision made by the lower court. *Kuhlmann v. City of Omaha*, 251 Neb. 176, 556 N.W.2d 15 (1996). In the absence of anything to the contrary, statutory language is to be given a plain and ordinary meaning, and an appellate court will not resort to interpretation to ascertain the meaning of statutory words which are plain, direct, and unambiguous. *State ex rel. City of Elkhorn v. Haney*, 252 Neb. 788, 566 N.W.2d 771 (1997). In construing a statute, a court must attempt to give effect to all of its parts, and if it can be avoided, no word, clause, or sentence will be rejected as superfluous or meaningless; it is not within the province of a court to read anything plain, direct, or unambiguous out of a statute. *Omaha World-Herald v. Dernier*, 253 Neb. 215, 570 N.W.2d 508 (1997).

Section 43-1315 begins with the phrase "In reviewing the foster care status of a child *and in determining its order for disposition . . . .*" (Emphasis supplied.) Appellant urges this court to construe the reference to the term "disposition" to mean that any order considered dispositional must comply with § 43-1315. We do not read § 43-1315 so broadly. Rather, affording a plain and ordinary meaning, we read the beginning clause of § 43-1315 as meaning that when a court of competent jurisdiction reviews the status of a foster care placement, and in reaffirming or directing another disposition of the child, the court should consider the factors set forth in § 43-1315. Neb. Rev. Stat. § 43-1313 (Reissue 1993); § 43-1315. Considering the plain, ordinary meaning of the statute establishes that § 43-1315 merely articulates the criteria and requirements to be considered by a court when determining whether a foster care arrangement is appropriate. Thus, § 43-1315 applies to foster care status review hearings only.

We now examine whether sufficient evidence exists to support the continued detention order. See § 43-254. In this regard, appellant argues there was insufficient credible evidence indicating Gloria would be in danger if placed in appellant's custody. However, in *In re Interest of Joshua M. et al.*, 251 Neb. 614, 622, 558 N.W.2d 548, 556 (1997), we said a juvenile court is not required to " ' "wait until disaster has befallen a minor child before the court may acquire jurisdiction. If it is reasonable to assume that injury will occur absent action by the court, then the court may assume jurisdiction and act accordingly." ' " As such, identifying specific evidence of harm or risk of harm is unnecessary.

Appellant further argues the exhibits offered and the testimony proffered during the detention hearing do not provide sufficient facts to warrant the continued detention order. The exhibits were offered to demonstrate only that appellant is the father of Gloria, that the mother's parental rights were terminated, that the Nebraska Supreme Court affirmed the original judgment terminating the mother's parental rights, and that Gloria was placed in foster care on March 26, 1993. Appellant argues that none of these exhibits assist the State in meeting its burden of proof. We agree. However, the exhibits were offered only to establish factual and chronological information, not as proof that the continued detention order should be granted. Therefore, the juvenile court did not err in admitting the exhibits into evidence.

Appellant next argues the caseworker's testimony should not have been considered by the court because her testimony was based on inadmissible hearsay evidence contained in Gloria's case file. Appellant specifically objected to the caseworker's testimony where she expressed concern that appellant might repeat the same behavior with Gloria because he had impregnated Gloria's mother when the mother was only 12 years of age. Despite appellant's objection, the juvenile court allowed the caseworker to testify regarding the information contained in the case file, stating, "She can testify to it as a business record, so the objection is overruled." Regarding the court's ruling, appellant argues the business record exception is an improper basis on which to admit the caseworker's testimony, because the

caseworker lacked personal knowledge of the statements in the case file.

Strict rules of evidence are not applied to dispositional hearings. Neb. Rev. Stat. § 43-283 (Reissue 1993). We have established that both preadjudication and postadjudication detention hearings are dispositional; thus, § 43-283 applies, and relaxed rules of evidence may be followed. See *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991). Even though relaxed rules of evidence may be employed, the proceedings must still be fundamentally fair. *In re Interest of D.S. and T.S.*, 236 Neb. 413, 461 N.W.2d 415 (1990).

However, even if we were to determine that the caseworker's testimony was inadmissible hearsay and that the business record exception was inapplicable, any error on the part of the juvenile court is not fatal to the court's determination. Admitting the caseworker's testimony is harmless, since Janet Peterson, the foster care case manager, also testified regarding the risk of placing Gloria with appellant because he had previously engaged in sexual contact with a 12-year-old. As this court stated in *In re Interest of R.A.*, 226 Neb. 160, 167, 410 N.W.2d 110, 115 (1987), *overruled on other grounds*, *In re Interest of J.S., A.C., and C.S.*, 227 Neb. 251, 417 N.W.2d 147 (1987), "[A]ny error in receiving the exhibits was not fatal to the juvenile court's determination [because] [t]he court had before it other evidence, in the form of testimony and exhibits . . . sufficient to sustain the order of termination." Even if the caseworker's testimony were excluded, the court would still be cognizant of the risks involved with placing Gloria in appellant's custody. Therefore, we need not determine whether the caseworker's testimony was inadmissible or whether the business record exception applies.

Finally, in determining whether sufficient evidence exists to sustain the juvenile court's order, we note that continued detention can be granted only where the State has met the requirements of § 43-254. Section 43-254 requires the State to prove by a preponderance of the evidence that custody should remain with the Nebraska Department of Health and Human Services pending adjudication. See *In re Interest of R.G., supra*. In analyzing this question, the issue is whether allowing Gloria to live

with her father is contrary to her welfare. See *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997). We find that it is.

Gloria lived with her biological mother until her mother's parental rights were terminated. See *In re Interest of Joshua M. et al., supra.* Gloria has now been in foster care for nearly 5 years. Throughout this time, appellant has made no effort to contact or communicate with Gloria. The evidence also establishes that appellant impregnated Gloria's mother when he was 35 years of age and she was 12 years of age. At the time of the detention hearing, Gloria was 12 years old. Both the caseworker and the case manager, as well as the guardian ad litem, expressed concern that appellant posed a physical and psychological threat to Gloria given appellant's past conduct and Gloria's current age. Moreover, after being informed of the circumstances surrounding her own birth, Gloria apparently expressed disgust with appellant and stated she did not wish to know him. See *Sullivan v. Sullivan*, 249 Neb. 573, 544 N.W.2d 354 (1996) (stating that child's wishes are not controlling, but should not be disregarded). Given the facts presented at the detention hearing and the temporary nature of the detention order, we agree with the juvenile court that continued detention is warranted.

In his final assignment of error, appellant argues he was denied due process because the juvenile court granted continued detention without requiring a showing of reasonable efforts pursuant to § 43-1315. Since § 43-1315 does not apply to all dispositional orders, the State was not required to show reasonable efforts. Appellant's final assignment of error lacks merit.

We find that appellant's assignments of error lack merit and that the juvenile court's order granting continued detention was supported by sufficient evidence. We affirm.

AFFIRMED.