IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF CARMELLO W. & ZAVION W.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF CARMELLO W. AND ZAVION W.,
CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

DARNITA W., APPELLANT.

Filed October 23, 2018.    No. A-18-189.

Appeal from the Separate Juvenile Court of Douglas County: DOUGLAS F. JOHNSON, Judge. Affirmed.

Renee L. Mathias, of Schaefer Shapiro, L.L.P., for appellant.

Donald W. Kleine, Douglas County Attorney, and Anthony Hernandez for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

PIRTLE, Judge.

## INTRODUCTION

Darnita W. appeals the order of the separate juvenile court of Douglas County terminating her parental rights to her two children, Carmello W. and Zavion W. She challenges the statutory grounds for termination as well as the court's finding that terminating her parental rights was in the children's best interests. Following our de novo review of the record, we affirm.

## BACKGROUND

Darnita is the natural mother of Carmello, born July 2007, and Zavion, born December 2009. On December 22, 2016, the State filed a petition alleging the minor children were within the

meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016), because they lacked proper parental care by reason of the fault or habits of Darnita in that (A) Darnita's use of alcohol and/or controlled substances places the juveniles at risk for harm; (B) Darnita suffers from mental health problems and refuses to seek treatment or treat her mental health problems; (C) Darnita engages in domestic violence in the presence of the children; (D) Darnita is unable to provide the juveniles with proper parental care, support and/or supervision; (E) Darnita is unable to provide the juveniles with safe, stable, and appropriate housing; and (F) due to the above allegations, the juveniles are at risk of harm.

On the same day the petition was filed, the court entered an ex parte order for immediate temporary custody, placing the children in the custody of the Department of Health and Human Services for placement in foster care.

An adjudication and disposition hearing was held on March 14, 2017. Darnita admitted to counts A, D, and F of the petition, and the court found the children to be within the meaning of § 43-247(3)(a). The remaining allegations in the petition were dismissed by the State. The court ordered Darnita to (1) participate in and successfully complete Level II Intensive Outpatient Dual Diagnosis treatment program; (2) participate in individual therapy; (3) not possess or ingest alcohol and/or controlled substances unless prescribed by a physician; (4) undergo random, frequent, observed drug testing; (5) participate in alcoholics anonymous (AA)/narcotics anonymous (NA); (6) participate in supervised visitation with the children; (7) obtain and maintain a legal source of income; (8) obtain and maintain safe and adequate housing; (9) undergo a psychiatric evaluation; (10) take all medications as prescribed; and (11) cooperate with family support services.

A review and permanency hearing was held on July 11, 2017. The court continued the orders from March 14, with a few changes. For instance, Darnita was ordered to participate and successfully complete Level I Intensive Outpatient Program. She had completed Level II as previously ordered. She was also ordered to undergo an updated co-occurring mental health and substance abuse evaluation, and to participate in alternative dispute resolution of the permanency issue and be provided with relinquishment counseling.

On August 22, 2017, the State filed a motion to terminate Darnita's parental rights. The State alleged that termination of her parental rights was warranted pursuant to Neb. Rev. Stat. § 43-292(2) (Reissue 2016), because she has substantially and continuously or repeatedly neglected and refused to give her children necessary parental care and protection, and § 43-292(6), because reasonable efforts to preserve and reunify the family failed to correct the conditions that led to the determination that the children were within the meaning of § 43-247(3)(a). In regard to § 43-292(6), the motion alleged that Darnita had failed to consistently submit to urinalysis testing as requested, failed to abstain from the use of illegal drugs, failed to maintain legal and stable employment, failed to consistently participate with AA/NA, failed to successfully complete necessary chemical dependency treatment, failed to consistently attend visitation with her children, and failed to complete a psychiatric evaluation. In addition, the State alleged that termination of Darnita's parental rights was in the best interests of the children.

Trial was held on the motion to terminate on January 12, 2018. April Ramsey, a family permanency specialist with Nebraska Families Collaborative, testified for the State. She stated that her duties and responsibilities include creating a case plan with goals to attain family reunification, and implementing strategies and services to alleviate barriers to reunification. Ramsey testified

that she became the family's case manager on April 1, 2017, and that when she became the case manager she had a duty and responsibility to familiarize herself with Darnita's case history.

Ramsey testified that the children have been removed three times from their mother's care: December 22, 2011, March 24, 2014, and December 22, 2016. At the time of the first removal, Carmello was 5 years old and Zavion was 2 years old. The juvenile court terminated its jurisdiction on September 12, 2013. The second removal from Darnita's care, on March 24, 2014, was about 6 months after the juvenile court terminated its jurisdiction the first time. Carmello was 6 years old, and Zavion was 4 years old. The court terminated its jurisdiction on April 28, 2016.

The most recent removal, on December 22, 2016, was initiated by Darnita's phone call to the Child Abuse and Neglect Hotline, in which she stated that she was unable to provide for her children and that she wanted the Department of Health and Human Services to remove the children from her home. Darnita advised that she was unable to provide food for the children and that she had thoughts of harming herself and the children. Darnita's call to the hotline was made just days after the Department of Health and Human Services had terminated its services in the prior removal case.

Ramsey testified that Darnita has not been able to maintain sobriety from drugs and alcohol and that this has been a problem for a significant amount of time. She testified that Darnita's sobriety was a concern at the time of Carmello and Zavion's first two removals. Darnita also had two older children removed from her care in June 2003 due, at least in part, to her insobriety. Ramsey testified that Darnita has indicated that she does not believe her drug use makes her a bad parent.

Ramsey testified that Darnita has failed to complete most of her urinalysis tests and the ones that she did complete tested positive for either drugs or alcohol. Darnita was also unsuccessfully discharged from treatment. Ramsey testified that Darnita has indicated that she is only able to maintain sobriety when she is in treatment. Darnita was at a residential treatment facility at the time of trial, which she had entered on December 21, 2017. She has never provided Ramsey with proof of any participation in AA or NA meetings.

Ramsey further testified that under all three dockets involving Carmello and Zavion, Darnita has been offered the same or similar services in each case, which she found concerning because it shows a repetition of Darnita receiving services and reuniting with her children, only to repeat the same behavior resulting in the children being removed again.

Ramsey testified that Darnita's attendance at visitations with Carmello and Zavion was inconsistent. There was also a visit where Darnita and her boyfriend were having an argument and Darnita was throwing items out of the house. This occurred in front of the children. Further, it became necessary to have a male visitation worker supervise visits due to Darnita's aggressive behavior toward previous visitation workers.

Ramsey also testified regarding Darnita's inability to maintain safe, stable, and appropriate housing. She testified that Darnita was residing in a drug treatment facility at the time of trial and she was unaware that Darnita had anywhere to live after treatment. Darnita told Ramsey she had filled out an application with the Omaha Housing Authority and was on a waiting list. Ramsey also testified that Darnita was without housing between August and December 2017, when she entered residential treatment.

Ramsey also testified that Darnita has never provided proof of stable income, although she claimed at the time of trial that she was employed. Darnita had also not completed chemical dependency treatment, as evidenced by her ongoing treatment at the time of trial.

Ramsey testified that Darnita is not very responsive when she tries to contact her, and when Ramsey is able make contact with Darnita, she is not easy to get along with or talk to. Ramsey stated that Darnita has called her names, cursed at her, and kicked her out of her mother's house. Darnita also gives Ramsey excuses for not participating in services, saying that she has already had or completed the service, or that she will set up the service herself. Ramsey stated that she does not make referrals for services when a parent is refusing to participate in services.

Ramsey testified that in her opinion, it was in the children's best interests to terminate Darnita's parental rights. She stated that Darnita's inability to maintain sobriety negatively impacts the children because their needs are being neglected, there are safety concerns, and they have repeatedly been removed from Darnita and placed in the State's care, which is not in their best interests. She testified that the children need permanency and normalcy. Ramsey further indicated that Darnita's treatment at the time of trial did not change her opinion about termination because Darnita had been in numerous treatment programs in the past and has not maintained sobriety. Ramsey was concerned that if the children were returned to Darnita, they would end up reentering the system a fourth time.

Following trial, the court entered an order finding that grounds to terminate based on § 43-292(2) and (6) were proven by clear and convincing evidence and that termination of Darnita's parental rights was in the children's best interests.

## ASSIGNMENTS OF ERROR

Darnita assigns that the juvenile court erred in finding that statutory grounds existed to terminate her parental rights based on § 43-292(2) and (6) and erred in finding that terminating her rights was in the children's best interests.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of LeVanta S.*, 295 Neb. 151, 887 N.W.2d 502 (2016). When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *Id.*

## ANALYSIS

*Statutory Grounds for Termination.*

Darnita first assigns that the juvenile court erred in finding that statutory grounds existed to terminate her parental rights based on § 43-292(2) and (6). The bases for termination of parental rights in Nebraska are codified in § 43-292. Section 43-292 provides 11 separate conditions, any one of which can serve as the basis for the termination of parental rights when coupled with evidence that termination is in the best interests of the child. *In re Interest of Sir Messiah T. et al.*, 279 Neb. 900, 782 N.W.2d 320 (2010).

The State must prove the facts by clear and convincing evidence when showing a factual basis exists under any one of the eleven subsections of § 43-292. *In re Interest of Aaron D.*, 269 Neb. 249, 691 N.W.2d 164 (2005). Clear and convincing evidence is the amount of evidence that produces a firm belief or conviction about the existence of a fact to be proved. *Id.*

In its order terminating Darnita's parental rights to her children, the juvenile court found that the State had presented clear and convincing evidence to satisfy § 43-292, which provides in relevant part:

> The court may terminate all parental rights . . . when the court finds such action to be in the best interests of the juvenile and it appears by the evidence that one or more of the following conditions exist:
>
> . . . .
>
> (2) The parents have substantially and continuously or repeatedly neglected and refused to give the juvenile or a sibling of the juvenile necessary parental care and protection;
>
> . . . .
>
> (6) Following a determination that the juvenile is one as described in subdivision (3)(a) of section 43-247, reasonable efforts to preserve and reunify the family if required under section 43-283.01, under the direction of the court, have failed to correct the conditions leading to the determination.

In order to terminate parental rights under § 43-292(6), the State must prove by clear and convincing evidence that (1) the parent has failed to comply, in whole or in part, with a reasonable provision material to the rehabilitative objective of the plan and (2) in addition to the parent's noncompliance with the rehabilitative plan, termination of parental rights is in the best interests of the child. *In re Interest of Kassara M.*, 258 Neb. 90, 601 N.W.2d 917 (1999). The State is required to prove that the parents have been provided with a reasonable opportunity to rehabilitate themselves according to a court-ordered plan and have failed to do so. *Id.*

The motion for termination specifically alleged, in regard to § 43-292(6), that Darnita had failed to consistently submit to urinalysis testing as requested; failed to abstain from the use of illegal drugs; failed to maintain legal and stable employment; failed to consistently participate with AA/NA; failed to successfully complete necessary chemical dependency treatment; failed to consistently attend visitation with her children; and failed to complete a psychiatric evaluation. In regard to urinalysis testing and abstaining from illegal drugs, Ramsey testified Darnita has not been able to maintain sobriety and that this has been demonstrated over a significant amount of time. She testified that Darnita has failed to complete most of her urinalysis tests and the ones that she did complete were positive for either drugs or alcohol. The court reports prepared by Ramsey and entered into evidence showed that between July and October 2017, Darnita completed 10 out of 35 random drug screens. Darnita tested presumptive positive for cocaine on June 19 and admitted to using cocaine. She tested positive for alcohol on July 26 and August 2, and received an abnormal creatinine result on her urinalysis tests on August 9 and 18. She tested positive for cocaine and alcohol on September 20, tested positive for cocaine and phencyclidine (PCP) in October, and tested positive for PCP and alcohol on November 1.

Ramsey also testified that Darnita has never provided proof of stable income. She claimed at the time of trial that she was employed, but this was not confirmed. Darnita had also not completed chemical dependency treatment, as she was in a residential treatment facility at the time of trial. She had previously been unsuccessfully discharged for non-attendance from the Level I Intensive Outpatient Treatment Program she had been ordered to attend. Ramsey also testified that Darnita has never provided proof of any participation in AA or NA meetings. The court reports indicate that Darnita admitted that she does not attend AA or NA meetings.

In regard to Darnita's visitations with her children, Ramsey testified that Darnita's attendance was inconsistent. Between July and October 2017, Darnita attended 16 out of 25 visits. The motion to terminate also alleged that Darnita failed to complete a psychiatric evaluation. She did complete this requirement in September, after the motion to terminate was filed.

We conclude that the evidence clearly and convincingly established that Darnita has failed to comply, in whole or in part, with reasonable provisions material to the rehabilitation objective of the plan. See *In re Interest of Kassara M., supra.* She was offered numerous services and referrals were made for such services, but Darnita has failed to comply with the court's orders. She has made little effort to meet the conditions set by the court to reunify with her children. Therefore, the statutory ground for termination of Darnita's parental rights under § 43-292(6) is satisfied.

If an appellate court determines that a lower court correctly found that termination of parental rights is appropriate under one of the statutory grounds set forth in § 43-292, the appellate court need not further address the sufficiency of the evidence to support termination under any other statutory ground. *In re Interest of Chloe C.*, 20 Neb. App. 787, 835 N.W.2d 758 (2013). Thus, we do not address the sufficiency of the evidence to support termination under § 43-292(2). The next inquiry is whether termination of Darnita's parental rights is in the children's best interests.

*Best Interests and Parental Fitness.*

Darnita next asserts the juvenile court erred in finding that there was clear and convincing evidence to establish that termination of her parental rights was in the children's best interests. In addition to proving a statutory ground, the State must show that termination is in the best interests of the child. *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 814 N.W.2d 747 (2012). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must also show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of a child are served by having a relationship with his or her parent. Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.* The term "unfitness" is not expressly used in § 43-292, but the concept is generally encompassed by the fault and neglect subsections of that statute, and also through a determination of the child's best interests. *Id.* In discussing the constitutionally protected relationship between a parent and a child, the Nebraska Supreme Court has stated: "'"Parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being."'" *Id.* at 1033-34, 814 N.W.2d at 761. The best interests' analysis and the parental fitness analysis are fact-intensive

inquiries. And while both are separate inquiries, each examines essentially the same underlying facts as the other. *In re Interest of Kendra M. et al., supra.*

Darnita has a long history of alcohol and drug use. There is nothing in the record to indicate that Darnita would be able to maintain sobriety if reunited with her children. She was in treatment at the time of trial, but has indicated she can only stay sober when she is in treatment. Her failed sobriety for a significant period of time indicates that she would not be able to parent the children and maintain sobriety. She has indicated that she does not believe her drug use makes her a bad parent, which indicates a complete lack of understanding that her sobriety is necessary for her to safely parent her children.

This case involves the third time that Carmello and Zavion have been removed from Darnita's care. The children were removed in December 2011, adjudicated under § 43-292(3)(a), and services were provided for 18 months. The court's jurisdiction was terminated in September 2013. The children were removed the second time in March 2014. They were again adjudicated and services were provided. The court terminated its jurisdiction in April 2016. The children were then removed for the third time in December 2016. Numerous reasonable efforts were provided during all three cases. In the previous two cases, Darnita appeared to have rehabilitated herself such that the children were returned to her and the court terminated its jurisdiction. However, both times the children were removed again. These children should not have to repeat this cycle again. They deserve stability and permanency.

It is well established that when a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of parental rights; children cannot, and should not, be suspended in foster care or be made to wait uncertain parental maturity. *In re Interest of Stacey D. & Shannon D.*, 12 Neb. App. 707, 684 N.W.2d 594 (2004). There is no indication that Darnita is able or willing to rehabilitate herself to the point that she can parent these children long term. She has had many services provided to her and several chances to rehabilitate herself over a period of years and has failed to do so.

Based upon our de novo review of the record, we find clear and convincing evidence that Darnita is unfit. We also find that it was shown by clear and convincing evidence that termination of Darnita's parental rights is in the children's best interests.

CONCLUSION

Based on our de novo review, we conclude that the juvenile court did not err in terminating Darnita's parental rights to Carmello and Zavion. Accordingly, the court's order is affirmed.

AFFIRMED.